52 Md. App. 1 (1982)
445 A.2d 1073
WILLIAM BOZMAN
v.
THE OFFICE OF FINANCE OF BALTIMORE COUNTY, MARYLAND.
No. 1385, September Term, 1981.
Court of Special Appeals of Maryland.
Decided June 3, 1982.
The cause was argued before GILBERT, C.J., and MOORE, J., and WILLIAM W. WENNER, Associate Judge of the Sixth Judicial Circuit, specially assigned.
*2 William D. Quarles, with whom were Finley, Kumble, Wagner, Heine, Underberg & Casey and Alan I. Baron, P.C. on the brief, for appellant.
Michael J. Moran, Assistant County Solicitor for Baltimore County, with whom was Leonard S. Jacobson, County Solicitor for Baltimore County, on the brief, for appellee.
GILBERT, C.J., delivered the opinion of the Court.
William Bozman would have us reverse an order of the Circuit Court for Baltimore County (BRIZENDINE, J.) that effected the forfeiture of $3,950 found in the Bozman home during the execution of a search and seizure warrant.

THE FACTS
Whatever domestic tranquility existed in the Cockeysville home of William Bozman on Saturday morning, October 27, 1979, must have been shattered when three Baltimore County police officers and an unstated number of "members of the Department of Justice and Drug Enforcement Administration officers," all armed with a search and seizure warrant entered those premises.
One of the County police officers was Detective Robert Walbrecher, then assigned to the Narcotics Division. Walbrecher acted as "the evidence man." From the record we infer that such a person is an inventory taker or tally clerk. Whenever anything is seized by the police, the "evidence man" lists the identity of the item and where it was found.
Among the seized items listed by Walbrecher were small amounts of several proscribed controlled dangerous substances as well as paraphernalia patently used in connection with such substances. All but one of the items were seized from the "master bedroom" and an adjoining bathroom. The officers seized $1,780 from the appellant's dresser and a total of $2,170 from a safe in the bedroom and from Bozman's *3 wallet which was apparently found on the dresser. Walbrecher did not know in what part of the bedroom the controlled dangerous substances were found but was able to state that no controlled dangerous substances were found in the safe, the wallet, or the dresser.
The Office of Finance of Baltimore County filed a petition in the circuit court[1] for the forfeiture of the money "seized or captured in close proximity to [the] contraband controlled dangerous substances or controlled paraphernalia." In due time Bozman answered the petition. He asserted that the funds were his "property"; that he had never been "charged, tried or convicted pursuant to the arrest in connection with which said funds were seized"; that seizure occurred during an "illegal" search, and that a similar petition to that of the instant case was "filed" in the "District Court of Maryland for Baltimore County" and was "voluntarily dismissed."
When the case was tried before Judge Brizendine, Bozman did not testify and offered no evidence.[2]
Judge Brizendine obviously concluded that the monies were found in "close proximity" to the contraband, and he directed the forfeiture.

THE ISSUE
Bozman posits two arguments to us, namely:
"I. The trial judge erred in granting the appellee's forfeiture petition in the absence of proof that the forfeited money was found in close proximity to contraband controlled dangerous substances.
II. The trial judged [sic] erred in granting the appellee's forfeiture petition in the absence of proof of a final disposition of related criminal proceedings."

*4 THE LAW

Md. Ann. Code art. 27, § 297, provides in pertinent part:
"(a) Property subject to forfeiture.  The following shall be subject to forfeiture and no property right shall exist in them:
....
(6) All money or currency which shall be found in close proximity to contraband controlled dangerous substances or controlled paraphernalia or which otherwise has been used or intended for use in connection with the illegal manufacture, distribution, dispensing or possession of controlled dangerous substances or controlled paraphernalia.
This money or currency shall be deemed to be contraband of law and all rights, title and interest in and to the money or currency shall immediately vest in and to Baltimore City or the county in which it was seized, the municipal corporation, if seized by municipal authorities, or, if it was seized by State authorities, the State; and no such money or currency shall be returned to any person claiming it, or to any other person, except in the manner hereinafter provided...."
The breadth of the term "close proximity" deliberately has not been defined by either Maryland appellate court. Were we to undertake a delineating of "close proximity," it is almost a foregone conclusion that in any future searches, monies will always be found outside the area embraced by our definition. We shall not, therefore, attempt to define "close proximity." Instead, we shall treat the term with the same deference afforded "fraud"[3] and "a quantity sufficient to indicate an intent to distribute."[4] We liken "close proximity" to Justice Stewart's comment on pornography. We do *5 not define it, but we know it when we see it.[5] In short, we shall determine "close proximity" on a case-by-case basis.
"Close proximity" as used in Md. Ann. Code art. 27, § 297 (a) (6) must be understood with reference to the legislative purpose. Judge Digges, in Prince George's County v. Blue Bird Cab Co., Inc., 263 Md. 655, 662, 284 A.2d 203, 207 (1971), observed that the Legislature's purpose in adopting the forfeiture provisions was an "attempt not only to curtail drug traffic in this [S]tate, but to discourage such a blight from continuing in the future." In that case, the vehicle was leased from the cab company on a yearly basis at a daily rate of $16. The lessee was arrested while "sitting in ... [the] cab outside of Central High School in Prince George's County." The police had observed the lessee conduct heroin transactions from the cab. The sales were made to high school students. The County sought to have the vehicle forfeited to the County. The trial court dismissed the petition, but the Court of Appeals held that the proscribed sale of heroin from the cab met the stricture of the forfeiture statute. Thus, Blue Bird figuratively speaking watched its cab fly away.
The forfeiture directed by section 297 (a) (6) is directed at money that either was or is intended to be a part of an illicit controlled dangerous substance, or paraphernalia dealing. While unquestionably drugs or drug paraphernalia are forfeited because their mere possession violates the criminal law of this State, the same is not true generally of monies seized on or about premises that are searched pursuant to a valid warrant. To be subject to forfeiture the monies must be derived from criminal activity. Recognizing the great degree of difficulty that would confront the prosecution if it were required to prove that monies found in a search of premises were directly attributable to proscribed activity, the General Assembly wisely eliminated that burden by declaring that monies in "close proximity to contraband controlled dangerous *6 substances or controlled paraphernalia" were forfeited unless, after a hearing on a petition for forfeiture,[6] the court shall find that the monies seized were not in close proximity to contraband.
"Forfeiture is grounded in the legal fiction that an inanimate object can be guilty of a crime." Prince George's County v. Blue Bird Cab, 263 Md. at 658, 284 A.2d at 204. See also United States v. United States Coin and Currency, 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971). Whatever the practical effect may be, a forfeiture is not viewed in the eyes of the law to be a future or additional punishment of the individual whose property is so confiscated. Instead, the law looks upon the property as a living being and thus subject to punishment by way of forfeiture. It is, more simply stated, as if the property were a living co-defendant. See Various Items of Personal Property v. United States, 282 U.S. 577, 581, 51 S.Ct. 282, 284, 75 L.Ed. 558, 561 (1931).
At English common law, the prerequisite to forfeiture was a conviction. The reason the conviction was required was because forfeiture was seen as a punishment of the offender for his crime.[7] Forfeiture was not directed at the property itself. The English did not share our concept of the property's being a separate and distinct living thing, a co-defendant, or co-offender.
Maryland, as do most of the states, treats forfeiture as an action in rem, prosecuted against the property because of its connection with a crime. Prince George's County v. Blue Bird Cab, supra; see also The Palmyra, 25 U.S. (12 Wheat.) 1, 14-15, 6 L.Ed. 531, 535-36 (1827), where Mr. Justice Story, for the Court, said:
"In the contemplation of the common law, the *7 offender's right was not devested until the conviction. But this doctrine never was applied to seizures and forfeitures, created by statute, in rem, cognizable on the revenue side of the Exchequer. The thing is here primarily considered as the offender, or rather the offense is attached primarily to the thing; and this, whether the offense be malum prohibitum, or malum in se. ... Many cases exist, where the forfeiture for acts done attaches solely in rem, and there is no accompanying penalty in personam. Many cases exist, where there is both a forfeiture in rem and a personal penalty. But in neither class of cases has it ever been decided that the prosecutions were dependent upon each other.... In the judgment of this Court, no personal conviction of the offender is necessary to enforce a forfeiture in rem in cases of this nature."
See also Smith v. One Super Wild Cat Console Machine, 10 Or. App. 587, 500 P.2d 498 (1972); Annot. 3 A.L.R.2d 738 (1949).
The statute, Md. Ann. Code art. 27, § 297 (b), provides in pertinent part:
"Any property subject to forfeiture under this subheading may be seized upon process issued by any court having jurisdiction over the property except that seizure without such process may be made when 
(1) The seizure is incident to an arrest or a search under a search warrant or an inspection under an administrative inspection warrant;
(2) The property subject to seizure has been the subject of a prior judgment in favor of the State in a criminal injunction or forfeiture proceeding under this subheading;
(3) There is probable cause to believe that the property is directly or indirectly dangerous to health or safety; or
(4) There is probable cause to believe that the *8 property has been used or intended to be used in violation of this subheading.
In the event of seizure pursuant to paragraphs (3) and (4) of this subsection, proceedings under subsection (d) of this section shall be instituted promptly, except all proceedings relating to money or currency, which shall be instituted within 90 days from the date of final disposition of criminal proceedings which arise out of Article 27, § 276 through § 302 inclusive.
(i) All applications for the forfeiture of money or currency contraband shall be made by the director of finance of Baltimore City, the county treasurer,[[8]] municipal treasurer, or the Attorney General. The applications shall be by petition, affidavit and show cause order and shall be filed in the District Court or circuit court of the county or in the District Court of Baltimore City or a law court of the Supreme Bench of Baltimore City."
The statutory directive is that forfeiture proceedings shall be commenced within 90 days after "final disposition of criminal proceedings."
*9 Md. Ann. Code art. 27, § 264, allows forfeiture of monies seized as a result of a gambling arrest. The statute mandates that forfeiture shall be commenced within 90 days of "conviction." The appellant adroitly likens section 264 to section 297, and, while not specifically suggesting that we read the statutes to be in pari materia, very gently prods us in that direction.
We think that the Legislature meant to draw, and did draw a sharp distinction between forfeitures in gambling cases and forfeitures in controlled dangerous substances matters. The requirement of a "conviction" in a gambling case is a recognization by the General Assembly that, while gambling is unlawful, it is not such a heinous offense as to dictate forfeiture absent conviction.
Violations of the controlled dangerous substances act are treated much more severely. Patently, the members of the Legislature are fully cognizant that dealing in proscribed drugs and paraphernalia ofttimes results in crimes of violence. Addicts kill, rob, burglarize, and steal so as to obtain funds to sate their habits.[9]
Ordinarily, in a forfeiture case "final disposition" would *10 occur by the entry of a final, unappealable judgment, a nolle pros, a stet, or a verdict of not guilty.
The record before us fails to disclose what disposition was made except that, based on the testimony of the only witness produced at the trial and on the answer to the petition, we may safely infer that charges were never filed in either a State or a federal court.
The record is absolutely silent as to the reasons for the non-prosecution of the appellant, although any number of things might be inferred. We shall not attempt to enumerate them.
There is no indication in the minimal record before us as to when, if ever, the "final disposition" occurred. We observe, however, that there is no statute of limitations on felony criminal offenses nor on "penitentiary misdemeanors." Thus, the mere passage of time would not preclude the filing of charges against Bozman. See Smallwood v. State, 51 Md. App. 463, 443 A.2d 1003 (1982).
The statute does not, in our view, require that the governmental agency affirmatively prove as part of its case that it commenced proceedings within 90 days of "final disposition." On the contrary, the 90-day period is likened unto a statute of limitations and, as with limitations, must be specially pleaded and demonstrated. It is, in essence, an affirmative defense. Since the record in the instant case fails to show when "final disposition" occurred, if in fact it has, we are unable to say that the forfeiture was not begun within the statutory time frame.
At the expense of repetition, we again state that there need be no conviction, final or otherwise, in order for there to be a forfeiture. The Palmyra, supra.

THE HOLDING IN THE INSTANT CAUSE
Judge Brizendine had before him evidence that demonstrated that monies were found in a position that by any fair standard of judgment could be said to be in "close proximity" *11 to contraband. The evidence in the instant case went one more step. The County showed that "tally sheets with names, weights and prices on them" were found on the premises.
The County was required to prove its case by a preponderance of the evidence. Prince George's County v. Blue Bird Cab Co., Inc., supra. It met that test in the trial judge's view. We are unable to state that Judge Brizendine was clearly erroneous. Md. Rule 1086. Bozman, of course, had the right to controvert, other than through cross-examination, the evidence adduced by the County. He elected to stand or fall on the basis of the County's case. He fell before the trial court, and as far as we are concerned, he shall remain in that fallen position.
Order affirmed.
Costs to be paid by appellant.
NOTES
[1] For reasons that we fail to comprehend, the appellant did not set forth the petition in the record extract. We are, pursuant to Md. Rule 1028 b. 1. (b), permitted to dismiss the appeal on that ground. Md. Rule 1035 b (5).
[2] Indeed, Bozman did not answer the written interrogatories propounded to him by the County. Instead, he sought a protective order. The case was tried before the motion for the order was ruled on by the court.
[3] "No court has ever attempted to define fraud." Allcord v. Skinner, 36 Ch. 145, 183 (1887).
[4] See generally, Williams v. State, 14 Md. App. 619, 287 A.2d 803 (1972). We have eschewed any attempt to have us determine the minimum quantity necessary to constitute an amount sufficient to indicate an intent to distribute.
[5] Jacobellis v. Ohio, 378 U.S. 184, 12 L.Ed.2d 793, 84 S.Ct. 1676 (1964).
[6] Md. Ann. Code art. 27, § 297 (b) (4) (ii).
[7] At 4 Blackstone * 386 it is said by Sir William that he "here omit[s] the particular forfeitures created by the statutes of praemunire [to forewarn] and others, because I look upon them rather as a part of the judgment and penalty inflicted by the respective statutes...."
[8] The Baltimore County Charter § 514 states that:

"The office of finance shall be administered by the director of finance, who shall be appointed on the basis of his experience in financial administration. He shall be responsible directly to the county administrative officer."
Section 1109 of the Charter declares:
"Unless otherwise hereafter provided by law, the director of finance shall give the same bonds for the faithful performance of his duties as are now required of the county comptroller, and, after the abolition of the office of county treasurer, such additional bonds as may be required of such officer. All references in the laws to the county treasurer shall, after the abolition of said office, be construed to refer to the director of finance, whenever such construction would be reasonable."
Therefore, we read Md. Ann. Code art. 27, § 297 (b) (i) as stating "director of finance" instead of "county treasurer."
We do not, however, read the section to confer the authority to file petitions for forfeiture upon the "Office of Finance." Since the issue was not raised, we do not further discuss it. Md. Rule 1085.
[9] Report, Task Force on Addictions and The Criminal Justice System (1982), states at p. 4:

"A recent study of 237 male heroin addicts from Baltimore revealed that, over an eleven-year period, these men committed more than 500,000 crimes (excluding drug use and possession):
`One of the major findings of this study was that heroin addicts commit a staggering amount of crime and that this continues fairly much on a daily basis for years and decades....
The research findings ... show that the average addict has committed one or more crimes during some 2,000 days. Taken together, these 237 male opiate addicts have been responsible for committing more than 500,000 crimes during an eleven year risk period. The exact figure is 473.738 crime-days, but this does not include multiple offenses committed on a given day, so the figure of 500,000 crimes is an underestimate. In this regard, it should be noted that theft was the principal type of crime committed and that drug use or possession were not, themselves, classified as crimes.
This high frequency of criminality among opiate addicts is similar to that which has been reported by other investigators....'" (Footnote omitted.)