In re Robert Kenneth **RYAN**, Debtor.

Stephen H. **SACHS**, Attorney General of Maryland, to the Use of the State of Maryland, Plaintiff,

v.

Robert Kenneth **RYAN**, Debtor/Defendant,

and

Neal S. **Melnick**, Trustee/Defendant.

Bankruptcy No. 80–2–0347L.

Adv. No. 82–0606.

United States Bankruptcy Court, D. Maryland.

Aug. 22, 1983.

See also, Bkrtcy., 15 B.R. 514.

James J. Doyle, III, Asst. Atty. Gen., Pikesville, Md., for Stephen H. Sachs, Atty. Gen. and plaintiff.

Charles A. Castle, Elliot, Nicklas & Castle, Frederick, Md., for Robert Kenneth Ryan, debtor and defendant.

## MEMORANDUM AND ORDER GRANTING RELIEF FROM AUTOMATIC STAY

JAMES F. SCHNEIDER, Bankruptcy Judge.

The Attorney General of Maryland filed this Complaint for Relief from Automatic Stay in order to proceed with a forfeiture action in the Circuit Court for Frederick County concerning $5,562 in currency. The currency came into the possession of members of the Maryland State Police in the course of the arrest of the Debtor on various criminal charges, involving possession of controlled dangerous substances. The Debtor was indicted, found guilty and received a suspended sentence on March 7, 1980. Six days later, he filed a Petition for Relief under Chapter 7 of the Bankruptcy Code.

The Attorney General then brought the forfeiture action in the Circuit Court, seek-

ing to have the money declared forfeited to the State pursuant to Md.Code Art. 27, § 297 (1980 Repl.), which at the time of the Debtor's arrest, provided in pertinent part:

(a) Property subject to forfeiture—The following shall be subject to forfeiture and no property right shall exist in them:

. . . . .

(6) All money or currency which shall be found in close proximity to contraband controlled dangerous substances or controlled paraphernalia or which otherwise has been used or intended for use in connection with the illegal manufacture, distribution, dispensing or possession of controlled dangerous substances or controlled paraphernalia.

This money or currency shall be deemed to be contraband of law and all rights, title and interest in and to the money or currency shall immediately vest in and to Baltimore City or the county in which it was seized, the municipal corporation, if seized by municipal authorities, or, if it was seized by State authorities, the State; and no such money or currency shall be returned to any person claiming it, or to any other person, except in the manner hereinafter provided;

. . . . .

(b) Seizure of property subject for forfeiture—any property subject to forfeiture under this subheading may be seized upon process issued by any court having jurisdiction over the property except that seizure without such process may be made when—

(1) The seizure is incident to an arrest or a search warrant or an inspection under an administrative inspection warrant;

. . . . .

(4) There is probable cause to believe that the property has been used or intended to be used in violation of this subheading.

In the event of seizure pursuant to paragraphs (3) and (4) of this subsection, proceedings under subsection (d) of this section shall be instituted promptly, except all proceedings relating to money or currency, which shall be instituted within 90 days from the date of final disposition of criminal proceedings which arise out of Article 27, § 276 through § 302 inclusive.

(i) All applications for the forfeiture of money or currency contraband shall be made by the director of finance of Baltimore City, the county treasurer, municipal treasurer, or the Attorney General. The applications shall be by petition, affidavit and show cause order and shall be filed in the District Court or circuit court of the county or in the District Court of Baltimore City or a law court of the Supreme Bench of Baltimore City.

At issue here is the question of whether to lift the automatic stay to permit the State to pursue the forfeiture of the money, and the ultimate question of who gets the money if it is found to be contraband and forfeited.

## "RYAN I" AND THE REJECTION OF "RETROACTIVE VESTING"

This is not the first time that a portion of this controversy between the State and Mr. Ryan has been before this Court. *In re Ryan*, 15 B.R. 514 (Bkrtcy.D.Md.1981) ["*Ryan I*"] was a declaratory judgment action filed by the State in which Judge Harvey M. Lebowitz ruled that the funds which were seized on the eve of bankruptcy were property of the estate and that they were therefore protected from forfeiture by the automatic stay imposed by 11 U.S.C. § 362(a) (Supp. V 1981). In response to the decision that the forfeiture proceeding is stayed until this Court permits it to proceed, the State filed the instant complaint.

The Attorney General contends here, as he did in *Ryan I*, that a decision in favor of the State in the forfeiture proceeding relates back to the date of the Debtor's arrest, thus vesting in the State all right, title and interest in the funds. This theory of "retroactive vesting" was rejected in *Ryan I*, which held that the funds became an asset of the bankruptcy estate pursuant to 11 U.S.C. § 541(a). *Ryan I*, 15 B.R. at 517; *In re Ford*, 3 B.R. 559, 568–70 (Bkrtcy.D.

Md.1980), *aff'd per curiam sub. nom. Greenblatt v. Ford,* 638 F.2d 14 (4th Cir.1981).

■ While the Attorney General's "retroactive vesting" theory might be proper in the absence of conflicting federal law, granting it legal status after the filing of a petition in bankruptcy would be to exalt state law over federal law, violating both the supremacy and bankruptcy clauses of the United States Constitution. U.S. Const. art. VI, cl. 2; art. I, § 8, cl. 4.

The Attorney General argues that his "retroactive vesting" theory is supported by analogies with bankruptcy cases involving disputes over lease terminations and non-bankruptcy forfeiture cases. Neither group of cases is analogous because they involve nothing analogous to the conflict here between state forfeiture law and federal bankruptcy law.

The landlord cases, *In re Southeastern Farm Supply, Inc.,* 11 B.R. 89 (Bkrtcy.M.D. Ala.1981) and *In re Final Touch Boutique, Inc.,* 6 B.R. 803 (Bkrtcy.S.D.Fla.1980), merely held that a duly *terminated* lease cannot be assumed by the Trustee and that a landlord can be granted a modification of the automatic stay imposed by 11 U.S.C. § 362(a) to determine in state court whether the lease *terminated* before the petition in bankruptcy was filed. In each case the issue was whether the lease had terminated under state law before the filing of the petition, thereby leaving no leasehold estate to come into the bankruptcy estate.

The Attorney General is not offered any more succor by his line of non-bankruptcy forfeiture cases. While *Simons v. United States,* 541 F.2d 1351 (9th Cir.1976) and *Weathersbee v. United States,* 263 F.2d 324 (4th Cir.1958) held that retroactive vesting of title in the federal government as a result of a forfeiture finding defeats the title of a purchaser who acquires the property after an illegal act, neither involved a statute similar to 11 U.S.C. § 726(a). Nor did *New Jersey v. Moriarity,* 268 F.Supp. 546 (D.N.J.1967), which upheld the state forfeiture action against a subsequent claim by the Internal Revenue Service. *Ivers v. United States,* 581 F.2d 1362 (9th Cir.1978)

upheld retroactive vesting in the federal government, but again the forfeiture action was unrestrained by any provision similar to section 726(a).

■ Not only does the claim become an asset of the estate, at least until exempted, but the Code provisions which set the order of distribution in a Chapter 7, 11 U.S.C. § 726(a), and classify as nondischargeable claims as the state's forfeiture claim, transform the nature of the forfeiture proceeding. Upon the success of the State in the forfeiture action, the Bankruptcy Code converts the State's *in rem* rights against the money into a claim against the estate and a nondischargeable debt of the Debtor for the balance of the claim not satisfied by the estate. In drafting the Bankruptcy Code, Congress consciously decided that the estate should not be depleted by the Debtor's previous wrongdoing. *Ryan I,* 15 B.R. at 519–21.

## ISSUE I: WHETHER OR NOT TO LIFT THE AUTOMATIC STAY

■ The choices before the Court are difficult: (1) deny the complaint to lift stay and force the State to litigate its claim to the funds in this forum, which runs the risk of exercising jurisdiction over a state-created cause of action, running afoul of *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), possibly embroiling this Court in a controversy in which it possesses no expertise and which perhaps ought to be left to the State as a matter of comity; or granting the lifting of the stay and thereby possibly abrogate to a State Court the proper function of the bankruptcy court of determining whether or not the fund in question is an asset of the estate. This Court has chosen the latter, but will attempt to delimit the role of the State Court to that of fact finder, by restrictively modifying the stay to permit the forfeiture case to proceed to judgment, and no further. The doctrine of collateral estoppel will bar a second litigation of the issue of whether the funds in question are contra-

band. *In re Regal Const. Co., Inc.,* 28 B.R. 413 (Bkrtcy.D.Md.1983). The Supreme Court's invalidation of bankruptcy court jurisdiction in *Northern Pipeline, supra,* makes an even stronger case for the application of collateral estoppel in the present situation. *Cf. In re Davis,* 23 B.R. 639 (Bkrtcy.W.D.Ky.1982). Upon the determination of whether the funds in question are contraband, the next issue arises.

ISSUE II: DEPENDING UPON THE OUTCOME OF THE FORFEITURE PROCEEDING, WHO GETS THE MONEY?

■ If the State Court determines that the $5,562 in question here was neither used nor intended to be used in violation of Maryland's controlled dangerous substances laws, Md.Ann.Code Art. 27, § 297(a)(6) (1980 Repl.), the funds will be turned over to the Trustee in Bankruptcy and then to the Debtor. He has claimed his rights in the forfeiture proceeding, which became part of the bankruptcy estate pursuant to 11 U.S.C. § 541(a), as exempt property pursuant to 11 U.S.C. §§ 522(b), (d)(1), (5). The Trustee filed a Report of Exempt Property on August 14, 1980, which does not object to the Debtor's Claim of Exempt Property. Bankruptcy Rule 403.

■ However, if the Circuit Court finds the money to have been a fruit or instrumentality of crime, the Trustee will be given leave to amend his Report of Exempt Property in order to object to the claim of exemption. In either case, the funds will be turned over to the Bankruptcy Trustee. Allowing the Debtor to exempt money used or intended to be used in the illegal drug trade would defeat the Congressional purpose in enacting 11 U.S.C. § 726(a), namely that of preventing the depletion of the estate by the Debtor's previous wrongdoing. *Ryan I,* 15 B.R. at 519–21; *see* H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 383 (1977). It would also make a mockery of common notions of morality and do violence to the Congressional purpose of affording a fresh start to only the *honest* debtor.

■ To countenance such a manifestly unjust result would also be contrary to the maxims of equity which guide this court of equity. 28 U.S.C. § 1481 (Supp. V 1982). "The Debtor has a duty to do equity before he can claim his right to exemption." *In re Dorricott,* 5 B.R. 192, 196 (Bkrtcy.N.D.Ohio 1980). Neither the absence of a statutory provision governing the exemption of such tainted assets nor the paucity of precedents on the issue should restrain this Court from doing justice.

In the absence of specific statutory guidance on this issue, this Court adopts the Fourth Circuit's interpretation of Section 6 of the old Bankruptcy Act, 11 U.S.C. § 24 (1976), *repealed by* Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, § 401 (1978) as stated in the case of *Hyman v. Stern,* 43 F.2d 666, 668, 16 A.B.R. (N.S.) 416, 419–20 (4th Cir.1930):

> While it is well-established law that exemptions in behalf of unfortunate debtors are to be liberally construed in furtherance of the object of such statutes, so, also, must it be remembered that courts of bankruptcy proceed upon equitable principles and should no more sustain a positive fraud than would a court of equity.

> In the face of the undisputed facts in this case, which show that the bankrupts have taken the law into their own hands and deliberately and wilfully allotted to themselves many times more than the exemption laws of the state of North Carolina allows to honest men, they are now asking the court to place a premium in their deliberate and wilful fraud by allowing them in addition thereto five hundred dollars each.

> The statutes of exemption are made for honest debtors, not for those who wilfully and deliberately conceal for their own use and refuse to turn over to their trustee many times the amount exempted to them by the laws of their states.

> The real question presented for decision is whether a bankrupt, be he knave or not, will be permitted by self-help to obtain a much larger exemption than the

law allows, and, still retaining it, demand more.  We think not.

### ORDER

Wherefore, it is this 22nd day of August, 1983, by the United States Bankruptcy Court for the District of Maryland at Baltimore,

ORDERED that the automatic stay imposed by § 362(a) is hereby modified to permit the State of Maryland to proceed to judgment of its forfeiture action concerning this Debtor in the Circuit Court of Frederick County, consistent with the terms of this Opinion.