**In re Enrique Fernando REID, Debtor.**

**Robert Joel ZAKROFF,
Trustee, Plaintiff,**

v.

**Max R. BOHNSTEDT, Director Department of Finance, Montgomery County, MD., Defendant.**

**Bankruptcy No. 84–AX–1811.**

**Adv. No. 85–0224A.**

United States Bankruptcy Court,
D. Maryland,
at Rockville.

April 28, 1986.

Robert Zakroff, Bethesda, Md., Trustee.

Joann Robertson, Rockville, Md., for Montgomery County, Md. Dept. of Finance.

## MEMORANDUM OF DECISION

PAUL MANNES, Bankruptcy Judge.

This matter is before the court on the complaint of the trustee for turnover of certain property seized from the debtor's residence by law enforcement officers acting under a search and seizure warrant. Insofar as the seized property, $35,595 in U.S. currency, had been turned in by the law enforcement agency before the filing of the bankruptcy petition to the Montgomery County Department of Finance pursuant to state law, the County's subsequent motion to lift the stay of 11 U.S.C. § 362(a) was denied in deference to the trustee's action to recover possession of the property under 11 U.S.C. § 542(a). Either way, the central issue narrows down to the extent of the debtor's prepetition interest in the currency, which in turn determines what becomes property of the estate upon commencement of a case.

On September 19, 1984, Montgomery County law enforcement officers arrested Enrique Fernando Reid (the debtor) in his home on a charge of possession of cocaine with intent to distribute and seized, among other things, $35,595 in U.S. currency pursuant to a search and seizure warrant. In the early morning hours of September 20, 1984, the debtor was given a Notice of Money or Currency Seizure which recited, in part, that

> If the defendant pleads guilty to or is found guilty of any controlled dangerous substance violations, Montgomery County, Maryland will file a petition in the District or Circuit Court for Montgomery County, requesting forfeiture of the money or currency. The forfeiture petition will request that the money or currency seized be forfeited to Montgomery County, Maryland.

The debtor did in fact plead guilty to the charges and received sentencing on May 1,

1985. In the meantime, however, the debtor's attorney in the criminal matters, Victor L. Crawford, filed an involuntary Chapter 7 petition against the debtor on December 18, 1984, as to which an order for relief was entered and a trustee appointed February 14, 1985. Therefore, the County's petition for forfeiture, filed in circuit court on May 17, 1985, was stayed and the trustee left to pursue turnover in this court.

## I. THE COMPLAINT FOR TURNOVER

Section 542(a) of the Bankruptcy Code provides that,

§ 542. *Turnover of property to the estate.*

(a) Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

The operative provisions of §§ 363 and 522, referred to in § 542(a), relate to "property of estate." 11 U.S.C. §§ 363(b)(1), 363(c)(1), and 522(b). Determination of what constitutes "property of the estate" is governed by § 541. The trustee argues that the subject forfeiture of property under state law does not prevent such property from becoming property of the estate because of § 541(c)(1)(A), which provides in pertinent part that,

an interest of the debtor in property becomes property of the estate under subsection (a)(1), (a)(2), or (a)(5) of this section notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law ... that restricts or conditions transfer of such interest by the debtor.

The Maryland forfeiture statute is the "applicable nonbankruptcy law" which the trustee argues must yield to the Bankruptcy Code, § 541(a)(1) of which would otherwise bring the currency into the estate.

The court finds that the trustee's reliance on § 541(c)(1)(A) is misplaced under the circumstances of this case. We are not dealing with a statute which restricts or conditions "transfer" of the debtor's interest in property as addressed in § 541(c)(1)(A). The Maryland statute instead defines property which is deemed contraband and vests ownership of such property in the government. It provides, in pertinent part,

§ 297. *Forfeitures and seizures generally; motor vehicles.*

(a) *Property subject to forfeiture.* —The following shall be subject to forfeiture and no property right shall exist in them:

. . . .

(6) All money, coin or currency which has been used or intended for use in connection with the illegal manufacture, distribution, dispensing or possession of controlled dangerous substances or controlled paraphernalia. All money, coin, or currency which is found in close proximity to contraband controlled dangerous substances, controlled paraphernalia, or forfeitable records of the importation, manufacture, or distribution of controlled dangerous substances are presumed to be forfeitable under this paragraph. The burden of proof is upon a claimant of the property to rebut this presumption.

This money or currency shall be deemed to be contraband of law and all rights, title and interest in and to the money or currency shall immediately vest in and to Baltimore City or the county in which it was seized if it was seized by a county or Baltimore City law enforcement agency, including a local sheriff's department which is the law enforcement agency, the municipal corporation, if seized by municipal authorities, or, if it was seized by State law enforcement authorities, the State; and no such money or currency shall be returned to any person claiming it, or to any other

person, except in the manner hereinafter provided;

....

(b) *Seizure of property subject to forfeiture.*

(1) Any property subject to forfeiture under this subheading may be seized upon process issued by any court having jurisdiction over the property except that seizure without such process may be made when—

(i) The seizure is incident to an arrest or a search under a search warrant or an inspection under an administrative inspection warrant;

(ii) The property subject to seizure has been the subject of a prior judgment in favor of the State in a criminal injunction or forfeiture proceeding under this subheading;

(iii) There is probable cause to believe that the property is directly or indirectly dangerous to health or safety; or

(iv) there is probable cause to believe that the property has been used or intended to be used in violation of this subheading.

(2) In the event of seizure pursuant to paragraphs (1)(iii) and (1)(iv) of this subsection, proceedings under subsection (d) of this section shall be instituted promptly, except all proceedings relating to money or currency, that shall be instituted within 90 days from the date of final disposition of criminal proceedings that arise out of Article 27, § 276 through § 302 inclusive.

....

(3)(i) If proceedings relating to money or currency are not instituted by the State or a political subdivision within the 90 day period, the money or currency seized under this section, upon petition by the defendant, shall be returned to the defendant.

(ii) If the defendant fails to petition for return of the money or currency within 1 year from the date of final disposition of criminal proceedings, the money or currency shall revert to the treasury as provided by subsection (d) of this section.

(c) *Seized property not repleviable; sealing or removal of seized property.* —Property taken or detained under this section shall not be repleviable, but shall be deemed to be in the custody of the person who seized said property subject only to the orders and decrees of the court or the official having jurisdiction thereof. Whenever property is seized under the provisions of this subheading, the person who seized said property may:

(1) Place the property under seal;

(2) Remove the property to a place designated by the court.

(d) *Disposition of forfeited property.* —Except as provided under subsection (j) of this section, whenever property is forfeited under this subheading, the political subdivision in which such property was seized, or, if the property was seized by State authorities, the State may:

(1) Retain the property for official use (except, whenever coin, currency, or property is seized by the Baltimore City policy, and forfeited under this subheading, it shall be surrendered to the City of Baltimore for disposition according to this section);

(2) Sell any forfeited property which is not required to be destroyed by law and which is not harmful to the public, provided that the proceeds be disposed of for payment of all proper expenses of the proceedings for forfeiture and sale including expenses of seizure, maintenance of custody, advertising and court costs;

(3) Require an appropriate agency to take custody of the property and remove it for disposition in accordance with law, or destruction.

*Md.Ann.Code* art. 27, § 297 (1985 Cumulative Supplement). The Maryland statute is simply not the type which is the subject of § 541(c)(1)(A). *Cf. e.g., Morris v. Philadelphia Electric Company,* 45 B.R. 350 (BC E.D.Penn.1984) (state regulations restricting application of federal Low Income Energy Assistance Program funds to payment of current heating bills, held not to prevent funds from becoming property of the estate even if funds were used to offset

postpetition energy costs); *In re Farmers Markets, Inc.,* 36 B.R. 829 (BC E.D.Calif. 1984) (state statute limiting transferability of liquor licenses by prerequisite of non-delinquency in payment of certain taxes held to be subject to § 541(c)(1)(A); *but see In re Polycorp Associates, Inc.,* 47 B.R. 671 (BC N.D.Calif.1985) and *California Board of Equalization v. MGM Liquor Warehouse,* 52 B.R. 77 (D.Minn.1985)).

If § 541(c)(1)(A) were available to the trustee to bring the currency into the estate, the trustee would have it that he may void the County's interest in the property through § 724(a), which provides that, "[t]he trustee may avoid a lien that secures a claim of a kind specified in section 726(a)(4) of this title." The latter section provides,

> § 726. *Distribution of property of the estate.*
>
> (a) Except as provided in section 510 of this title, property of the estate shall be distributed—
>
> ....
>
> (4) fourth, in payment of any allowed claim, whether secured or unsecured, for any fine, penalty, or forfeiture, or for multiple, exemplary, or punitive damages, arising before the earlier of the order for relief or the appointment of a trustee, to the extent that such fine, penalty, forfeiture, or damages are not compensation for actual pecuniary loss suffered by the holder of such claim;

Thus the trustee contends that the forfeiture at issue is subject to the trustee's lien avoidance power. Again, the court finds the trustee's reliance on the Code misplaced. We are not dealing with a "claim" held by the County for a forfeiture, much less a "lien" securing such claim. To the contrary, the County asserts outright ownership of the currency by operation of state law.

It is true that § 541(a)(1) of the Bankruptcy Code contains a broad definition of property of the estate, but the starting point for that definition is determining what are the property interests of the debt-

or, and that is a determination as to which state law controls. *See generally,* 4 *Collier on Bankruptcy,* ¶ 541.02[1], at 541–10. to 541–11 (15th ed. 1985). As has been said, "The language of § 541(c)(1)(A) does expand the concept of property entering a bankruptcy estate; however, the creation of property cannot be expanded 'where none existed under state law.'" *California Board of Equalization v. MGM Liquor Warehouse,* 52 B.R. at 80, *quoting Polycorp,* 47 B.R. at 673. The court finds that the interests of the County and the debtor in the currency are sharply defined by state law, i.e., Maryland Annotated Code art. 27, § 297.

The Maryland forfeiture statute gives the debtor a clear due process right to a forfeiture hearing to determine whether the currency falls within the definition or presumption of § 297(a)(6). (In the case at bar, such a proceeding was held before this court on the issue of whether the currency was found in "close proximity" to the cocaine and paraphernalia or otherwise forfeitable. *See* Part II *infra.*) The court does not doubt that the debtor's constitutional right to contest the forfeiture constituted a property interest encompassed under § 541(a)(1) of the Bankruptcy Code. But that was the extent of the debtor's interest in the currency at the commencement of the case and it was only the right to a forfeiture hearing which passed into the bankruptcy estate. When the hearing was held, the debtor's interest in the currency, such as it was, had been turned over to him. Whether that interest was reduced to money depended on the outcome of the forfeiture hearing, but in any case it is a question which is unrelated to the issue whether the County has property subject to turnover.

The trustee argues that a case which has twice been before the Baltimore division of this court, *In re Ryan,* 15 B.R. 514 (BC Md.1981) and 32 B.R. 794, 799 (BC Md. 1983) (*Ryan I* and *II*), is dispositive of the case at bar. In *Ryan I,* the court, Harvey M. Lebowitz, B.J., held on facts similar to those at bar that,

any action by the State to enforce a forfeiture in another forum against either the Debtor and his property or the property of the estate is stayed until such time as a Bankruptcy Court permits the action to proceed.

15 B.R. at 515. This conclusion was based in relevant part on the finding that "the right to claim the money after seizure, recognized by the provisions of the state statute, is an interest in property that becomes part of the bankruptcy estate." *Id.* at 518 (footnote omitted).

■ This court finds itself in accord with *Ryan I* in concluding that the right to "claim" the money in a forfeiture hearing is a property interest which passes into the bankruptcy estate. But this court further finds that such right is the extent of the debtor's interest in the currency and that it was this right to claim rather than the currency itself which became property of the estate under §.541(a)(1). The trustee attempted to reduce to money this property of the estate, as was his duty under § 704(1), when he litigated the forfeiture action. Were he successful, the right to claim would be reduced to $35,595. If not, the right to claim would bring nothing. The court considers this result no different than the common situation of a debtor having a prepetition cause of action which the trustee may pursue but sometimes abandons under § 554 as being of inconsequential value and benefit to the estate, e.g., if the debtor's case is a long shot.

In *Ryan II,* the State had filed the motion for relief from the stay as required by the holding in *Ryan I,* and the court, James F. Schneider, B.J., granted the motion to permit the government to proceed to judgment on the forfeiture action. 32 B.R. at 797. The court went on to ask, "depending upon the outcome of the forfeiture proceeding, who gets the money?" *Id.* at 798. The court hypothesized that if the money were found in state court not to be forfeitable, then it would be turned over to the trustee and eventually to the debtor, who had exempted his rights in the forfeiture proceeding. This court would agree with that conclusion, the debtor herein having exempted the money to the extent of his allowance.

*Ryan II* went on to address the possibility of the state court finding the money to be a forfeiture:

However, if the Circuit Court finds the money to have been a fruit or instrumentality of crime, the Trustee will be given leave to amend his Report of Exempt Property in order to object to the claim of exemption. In either case, the funds will be turned over to the Bankruptcy Trustee. Allowing the Debtor to exempt money used or intended to be used in the illegal drug trade would defeat the Congressional purpose in enacting 11 U.S.C. § 726(a), namely that of preventing the depletion of the estate by the Debtor's previous wrongdoing. *Ryan I,* 15 B.R. at 519–21; *see* H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 383 (1977).

32 B.R. at 798. This court disagrees with the conclusion that money so found to be forfeitable could then wind up in the debtor's hands. The above-quoted course of events could not occur under *Ryan I* or the facts of the case at bar, for we have found that the debtor's interest in the money is limited to a right to claim the money in a forfeiture hearing. Litigation of that right by the debtor or trustee without success reduces the debtor's interest and therefore the claim of exemption to zero. The trustee would have no purpose in objecting to an exemption which has turned out to be worthless.

In conclusion, the court finds that the extent of the debtor's interest in the currency at the commencement of the case was a right to claim the currency at a forfeiture hearing; that such interest became property of the estate upon commencement of the case; and that such property of the estate was turned over to the trustee when he was given a forfeiture hearing in the manner provided in Maryland Annotated Code art. 27, § 297. Therefore, the trustee's complaint for turnover goes to the extent to which the right to claim was reduced to money, i.e., the extent

if any to which the currency was found not to be forfeitable under the Maryland statute.

## II. THE FORFEITURE HEARING

The forfeiture hearing was held in this court on the issue of whether the $35,595 in currency was subject to forfeiture because it was "used or intended for use in connection with the illegal manufacture, distribution, dispensing or possession of controlled dangerous substances or controlled paraphernalia" or presumed to be forfeitable because it was "found in close proximity to contraband controlled dangerous substances, controlled paraphernalia, or forfeitable records...." *Md.Ann.Code* art. 27, § 297(a)(6). If the "close proximity" presumption is relied upon by the government, as it was here, "[t]he burden of proof is upon a claimant of the property to rebut this presumption." *Id.* The question arises as to exactly what is the presumption. The court notes that forfeitures generally are not favored. *Howard v. Federal Crop Ins. Corp.*, 540 F.2d 695, 697 (4th Cir.1976).

The court's research reveals no reported decisions on a "close proximity" case under Maryland Annotated Code art. 27, § 297(a)(6) as amended effective July 1, 1982. The predecessor to the 1982 version of § 297(a)(6) provided in pertinent part as follows:

> (a) *Property subject to forfeiture.* —The following shall be subject to forfeiture and no property right shall exist in them:
>
> ....
>
> (6) All money or currency which shall be found in close proximity to contraband controlled dangerous substances or controlled paraphernalia or which otherwise has been used or intended for use in connection with the illegal manufacture, distribution, dispensing or possession of controlled dangerous substances or controlled paraphernalia.

*Md.Ann.Code* art. 27, § 297(a)(6) (1957). While this earlier version of § 297(a)(6) made no mention of a presumption or bur-

den of proof, one particular "close proximity" case thereunder is instructive on the relevant inquiry to guide this court's determination under § 297(a)(6) as amended.

In *Bozman v. Office of Finance of Baltimore County*, 52 Md.App. 1, 445 A.2d 1073 (1982), *aff'd* 296 Md. 492, 463 A.2d 832 (1983), a search and seizure was conducted under circumstances and with results remarkably similar to those in the case at bar. The controlled dangerous substances were found in an undetermined part of the master bedroom. Also recovered were $1,780 from the claimant's dresser and a total of $2,170 from a safe in the bedroom and from the claimant's wallet upon the dresser. In analyzing § 297(a)(6), the Court of Special Appeals stated,

> The forfeiture directed by section 297(a)(6) is directed at money that either was or is intended to be a part of an illicit controlled dangerous substance, or paraphernalia dealing. While unquestionably drugs or drug paraphernalia are forfeited because their mere possession violates the criminal law of this State, the same is not true generally of monies seized on or about premises that are searched pursuant to a valid warrant. To be subject to forfeiture the monies must be derived from criminal activity. Recognizing the great degree of difficulty that would confront the prosecution if it were required to prove that monies found in a search of premises were directly attributable to proscribed activity, the General Assembly wisely eliminated that burden by declaring that monies in "close proximity to contraband controlled dangerous substances or controlled paraphernalia" were forfeited unless, after a hearing on a petition for forfeiture, the court shall find that the monies seized were not in close proximity to contraband.

445 A.2d at 1076. Thus it would appear that the "close proximity" provision of the earlier version of § 297(a)(6), while not labelled a presumption in the statute, was viewed as one by the court insofar as a burden of proof was "eliminated." Fur-

thermore, the inquiry in a "close proximity" case was whether "the monies seized were not in close proximity to contraband."

■ This court will follow for the case at bar the statutory construction set out by the Court of Special Appeals in *Bozman,* finding that the 1982 amendments to § 297(a)(6) do not change the premises upon which such construction was based. For the same reason, this court will follow the inquiry which the Court of Special Appeals found relevant in *Bozman,* i.e., whether the monies seized were not in close proximity to contraband. But it appears that that inquiry was more than simply whether the monies seized were in fact in close proximity to contraband. The Court of Special Appeals noted that,

> Bozman, of course, had the right to controvert, *other than through cross-examination,* the evidence adduced by the County. He elected to stand or fall on the basis of the County's case.

445 A.2d at 1078 (emphasis added). In affirmance, the Court of Appeals noted that,

> In this case there was no explanation for the presence of multiple controlled dangerous substances within a single bedroom and its connecting bath. Neither was there an explanation for the presence within that same room of an unusually large sum of money.

463 A.2d at 837. Insofar as both courts were open to independent controverting evidence or an explanation as to why the monies were found in close proximity to contraband but were not forfeitable, this court finds that such an inquiry has relevance in the case at bar. At issue is not merely whether the currency was found in close proximity to contraband but whether, despite that, the debtor has shown by independent controverting evidence that the currency was not "attributable to proscribed activity." 445 A.2d at 1076.

The debtor testified at length as to the source and use of the currency, which the County's glossy photographs indicated and the debtor does not dispute was found beneath a bottom drawer of the triple dresser on top of which was found approximately six ounces of a controlled dangerous substance, cocaine. According to the debtor, the currency was derived as follows:

$10,000 from accounts receivable in favor of the debtor's father, who had died in 1982 or 1983, after which the debtor went to his father's homeland, Panama, and collected the accounts as beneficiary

$5,000 from the debtor's sale of his father's van and pickup truck after the father's death

$3,000 from a San Diego, California, Federal Credit Union savings account which the debtor had built up through automatic payroll deductions while in the U.S. Army, and which the debtor closed out in 1982 or 1983

$5,000 from the debtor's mother, who came up from Panama in 1982

$5,000 to $6,000 from cocaine sales

the balance from debtor's savings as an auto mechanic

The debtor testified to having owned three taxis which he rented out and to having been a self-employed auto mechanic since 1980. He was paid by contract instead of by the hour and would make $500–$600 per week when slow or up to $2,000 per week when busy. He had not filed an income tax return since 1981. He did not have a bank account but dealt strictly in cash, using his income to pay the mortgage and stashing his wife's for savings. As for the cocaine which was found with the currency, it had been given to him by an out-of-town friend to sell and he had made no profit on it. He had dealt off and on for a couple of years, usually getting the cocaine on credit. The six ounces was the biggest "load" he had gotten.

The debtor's wife also testified as to the source and use of the $35,595.[1] She testi-

---

1. She was not charged in the search and seizure because the debtor announced to the arresting officers that she knew nothing about what was going on in the house and that everything which had been seized was his. The court finds that she has nothing to do with the matters at issue

fied that about two weeks before the debtor's arrest, they had had a fight and the debtor had taken her savings of about $6,000 which she kept in her underwear drawer in the triple dresser. The other amounts which she knew about were the moneys from the accounts receivable (which she fixed at $9,000); the $3,000 from the San Diego Federal Credit Union; $6,000 to $7,000 which the debtor had saved for eventually opening a repair garage of his own; and an unspecified amount of extra money she had given the debtor from her earnings for stashing. She had seen money which the debtor kept in a bottom drawer of the triple dresser but had never counted it.

The court notes that the debtor's creditors were: the holder of a $78,000 note secured by a deed of trust on the Reid's house; a physician (owed $48 on a post-arrest office visit); an attorney for the debtor in an earlier criminal proceeding (owed $1,818 for fees); Springfield Medical Center (owed $4,202 for post-arrest service); and the petitioning creditor Victor L. Crawford, Esq., who required the debtor to sign a $20,000 confessed judgment note for representation in the September 19, 1984, cocaine bust. No debts were scheduled as disputed. The debtor's Statement of Financial Affairs indicates income of $15,000 in 1983 and $1,300 per month for five months of 1984. The debtor's wife testified to having weekly income of about $400 from her job at a hair salon.

At the outset, the court finds that the County has shown by a vast degree beyond a preponderance of the evidence, *Prince George's County v. Blue Bird Cab Company, Inc.*, 263 Md. 655, 284 A.2d 203, 205 (1971), that the currency was found in "close proximity" to contraband. *See Bozman*, 463 A.2d at 837. Furthermore, the court finds an insufficiency of credible evidence, with one exception, to rebut the presumption that because the currency was found in close proximity to contraband, it was forfeitable. The court finds that the most probable explanation for the source of

the money is that it was proceeds of cocaine sales which the debtor had not yet turned over to his supplier to pay for the fronted cocaine. Such is a customary way of doing business according to the County's arresting officer, Paul Morrison, and was the debtor's procedure with respect to cocaine dealing according to the debtor's own testimony.

Other discrepancies in the facts of this case accumulate against any conclusion based on credible evidence other than a finding that the currency was contraband. The debtor's Statement of Financial Affairs indicates income of $15,000 for 1983 and $1,300 per month for five months of 1984. The debtor testified to making $500–$600 per week when business was slow, which would equate to at least $26,000 per year, or $2,000 per month, substantially more than was scheduled. The debtor testified to being a self-employed auto mechanic since 1980 but had no tools to claim under the unlimited-value, tools-of-the-trade exemption of Maryland Courts and Judicial Proceedings Code Annotated § 11–504(b)(1). The debtor did not testify to any part of the money being his wife's savings which he had taken from her in a fight, as did she. The debtor's wife did not testify to any part of the money coming from savings which the debtor's mother brought along when she moved up from Panama in 1982, as did he. The only amounts as to which the testimony of the debtor and his wife coincides is the $3,000 from the debtor's account at San Diego Federal Credit Union. The court finds that the debtor rebutted the presumption of forfeitability with credible evidence only to that extent.

On the basis of all of the above, the court finds that the debtor has shown that $3,000 of the seized currency is not attributable to proscribed activity and is therefore not forfeitable. The court will enter an order directing defendant to turn over this amount to the trustee for the bankruptcy estate.

herein, except as her knowledge bears on the

circumstances of the currency.