In re Norma Y. JAMES a/k/a Norma Y. Reynolds, Debtor.

Norma Y. JAMES, Plaintiff,

v.

Jacqueline DRAPER; State of New Jersey, Department of Law and Public Safety, Division of Criminal Justice; Peter N. Perretti, Jr., Attorney General of State of New Jersey; and Robert T. Winter, State of New Jersey, Department of Law and Public Safety, Division of Criminal Justice, Defendants.

Bankruptcy No. 89–12637S.
Adv. No. 89–0866S.

United States Bankruptcy Court,
E.D. Pennsylvania.

March 13, 1990.

Supplemental Opinion and Order
May 1, 1990.

Berneter Mallory, Velmin & Johnson, Philadelphia, Pa., for debtor-plaintiff.

Stephen Raslavich, Silverman, Markovitz, Meo & Raslavich, Philadelphia, Pa., trustee.

Steven L. Scher, Sr. Deputy Atty. Gen., State of N.J., Trenton, N.J., for defendants.

### OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

### A. INTRODUCTION

The instant proceeding, concerning the Debtor's efforts to recover $7,990 in cash (hereinafter "the Funds") which the State of New Jersey (hereinafter "the State") is attempting to retain as the fruits of a civil forfeiture proceeding, placed several interesting and difficult issues before the court. We cannot finally resolve all of issues because we find that the Chapter 7 Trustee, who is not a party hereto, is a necessary party and must be joined before this proceeding may go forward. We must therefore schedule a supplemental hearing to allow the Trustee, if joined, and the parties to present further evidence in light of our conclusion that the final disposition of the Funds should be resolved by this court.

We are, however, able to conclude that we have subject matter jurisdiction over his proceeding because the Debtor's cause of action against the Defendants with respect to the Funds is clearly property of the estate. We are also able to conclude that the Supreme Court's recent decision in *Hoffman v. Connecticut Department of Income Maintenance*, — U.S. —, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989), does not preclude the basically injunctive and declaratory relief to which we find that the Debtor is or may be entitled. Further, since we hold that the action in issue is not excepted from the automatic stay pursuant to § 326(b)(4), we find that the Defendants' Default Judgment in the Forfeiture Action against the Debtor, having been entered post-petition, was obtained in violation of the automatic stay imposed by § 362(a) of the Bankruptcy Code and must be stricken. Finally, we find that the Debtor's counsel is entitled to attorneys' fees under 11 U.S.C. § 362(h) because the state failed to acknowledge the effect of the stay even after it became aware of the Debtor's bankruptcy filing.

### B. FACTUAL AND PROCEDURAL BACKGROUND

The Debtor, NORMA Y. JAMES a/k/a NORMA Y. REYNOLDS (herein "the Debtor"), filed the underlying voluntary Chapter 7 bankruptcy case in this court on July 19, 1989. On September 21, 1989, the Debtor commenced this proceeding by filing what was designated as a Complaint Seeking to Have Creditors and Agents Held in Contempt and Seeking Damages for Violation of Automatic Stay (hereinafter "the Complaint"). The only Defendant named in the Complaint was JACQUELINE DRAPER (hereinafter "Draper"), a Deputy Attorney General of the State's Department of Law and Public Safety, Division of Criminal Justice (hereinafter "the Division"). By a "Praecipe for Change of Defendants' Names," filed November 27, 1989, named as Defendants were PETER N. PERRETTI, JR., the State's Attorney General; and ROBERT T. WINTER, Director of the Division. Because it is unclear whether this filing was meant to delete Draper as a party, we have retained her as a party defendant in the caption. Although neither the State nor any of the Defendants have filed a proof of claim in the Debtor's bankruptcy case, the Debtor, in paragraph 2 of the Complaint, claimed that the State is a creditor of the Debtor "by virtue of a claim for a forfeiture ..."

A trial was originally scheduled in this matter for November 7, 1989, and continued until December 5, 1989. Although the Debtor and her counsel appeared on the latter date, Draper failed to appear at either hearing. Fearing some problem with service had occurred, we called the Division on the court record and advised Peter R. Richards, Esquire, Section Chief of the Division's Civil Remedies & Forfeiture Bureau and Draper's superior, directly of this proceeding. We subsequently issued an Order scheduling the trial on January 11, 1990.

On December 26, 1989, the Defendants filed an Answer including five Affirmative Defenses: (1) the adversary proceeding was barred by the Eleventh Amendment; (2) the bankruptcy court lacked subject matter jurisdiction over the action; (3) the adversary proceeding failed to state a claim upon which relief can be granted; (4) the actions of the Defendants were excepted from the automatic stay by Bankruptcy Code § 362(b)(4); and (5) the Debtor lacked standing to bring this action.

The Defendants also filed a Motion to Dismiss pursuant to Bankruptcy Rule 7012 and Federal Rule of Civil Procedure (hereinafter "F.R.Civ.P.") 12(b)(1) and (b)(6) and a "Certification" of Draper. In the Certification, Draper recites a history of a civil forfeiture proceeding instituted in the Superior Court of New Jersey, Law Division, Burlington County, entitled *New Jersey v. $7990 in United States Currency*, Docket No. W–027603–88 (herein "the Forfeiture Action"), and alleges that, in all pertinent actions, she was acting in good faith in her official capacity as a Deputy Attorney General for the State.

The testimony at the trial was very sparse. The Debtor, who spoke with a pronounced West Indian accent, testified that, in March, 1988,[1] she obtained the Funds, which she intended to use to open a restaurant in New York with a friend, by making a loan from her credit union. She presented the Funds to one Patrick Brown (hereinafter "Brown"), who was to deliver them to her friend in New York in her car. In the course of this trip, Brown was apprehended by the New Jersey State Police, apparently for speeding, and neither he nor any passengers in the car (which did not include the Debtor) could produce a driver's license. The Funds were located in the car by the troopers and Brown apparently gave conflicting stories regarding the Funds' ownership. The State seized the Funds and began the Forfeiture Action on May 31, 1988. The Debtor, as a potential claimant, was served with a copy of the Complaint in the Forfeiture Action.

After receiving the State's Complaint, the Debtor retained William Bowe, Esquire, a New Jersey attorney (hereinafter "Bowe"), to represent her in the Forfeiture Action. Bowe contacted Leah A. McMahon, Esquire, a State Deputy Attorney General, and requested a continuance to file an Answer on behalf of the Debtor. Although the State granted the continuance, Bowe never filed an Answer. Nor was an Answer filed on behalf of any of the other potential claimants. The Debtor indicated that she was unable to pay Bowe his requested fee, which apparently caused him to cease his representation of her.

On July 18, 1989, the day before the Debtor filed her bankruptcy petition, the Debtor, as a potential claimant of the Funds, received notice of a hearing scheduled in Burlington, New Jersey, on July 21, 1989, to consider the entry of a Default Judgment in the Forfeiture Action. When the Debtor did not appear, the Default Judgment was entered on that date with respect to the Funds and all potential claimants, including the Debtor, and the Funds were forfeited to the State, thereby purportedly extinguishing all rights which any of the potential claimants may have had in the Funds.

At trial, the Debtor called Sharon Barkley, formerly a legal assistant in the law office of the Debtor's counsel, who testified that, on July 19, 1989, counsel for the Debtor called Draper and left her a message informing her of the Debtor's Chapter 7 filing. Draper testified that she did not receive any message from anyone on behalf of the Debtor until a telephone conversation with the Debtor's counsel in the afternoon of July 21, 1989, after the Default Judgment was entered. On August 4, 1989, Draper sent the Debtor a copy of the Default Judgment. Draper also testified that her file indicated that trained police dogs had detected a drug odor when they sniffed the Funds. However, she did not dispute the Debtor's testi-

---

1. The Debtor's recitation was actually that the events began in March, *1986*. We believe that this was simply a misstatement.

mony that no criminal charges were ever brought against anyone as a result of the incident and that the Debtor's car was returned to her.[2]

Subsequent to our announcement of the briefing schedule after the trial, we entered an Order of January 17, 1990, directing the Debtor to file her Brief by January 22, 1990; the Trustee, Stephen Raslavich, Esquire (hereinafter "the Trustee"), to provide a statement of his position by January 30, 1990; and the Defendants to file their Brief by February 12, 1990. The Trustee responded by stating, in an apparent misreading of the Debtor's Brief, that, since the Default Judgment had been entered prior to bankruptcy, the prospects of recovery were dim; he did not intend to pursue same; but he nevertheless believed that the Debtor lacked standing to maintain this proceeding.

We are not able to finally resolve this proceeding at this juncture and hence we need now render few Findings of Fact. However, we will include a narrative Discussion containing our resolution of the legal issues which we are able to decide at this time and then order the joinder of the Trustee and the scheduling of the requisite supplemental trial.

## C. DISCUSSION

### 1. AS THIS IS A CORE PROCEEDING, THIS BANKRUPTCY COURT NOT ONLY HAS JURISDICTION TO HEAR THIS MATTER, BUT ALSO MUST DETERMINE IT.

The Defendants argue that this court lacks subject matter jurisdiction to hear this proceeding. The argument advanced is that the Forfeiture Action, having been pending prior to the Debtor's bankruptcy and not having been removed to this court, must be allowed to proceed there.

In making this argument, the Defendants overlook the presence of the automatic stay. Indeed, the principal thrust of

the Complaint is a contention that the Defendants violated the automatic stay in obtaining the Default Judgment in the Forfeiture Action and that to allow the State to proceed to enforce that judgment would constitute persistence in violating the stay. Furthermore, if we conclude (as we do) that the entry of the Default Judgment and continuation of further proceedings in the Forfeiture Action was and would be violative of the stay, we are left with a problem of deciding the rights of the Debtor and her estate in property of significant value.

Bankruptcy courts derive their subject-matter jurisdiction from 28 U.S.C. §§ 157(a) and 1334(a) and (b). Section 1334(a) provides that "the district courts shall have original and exclusive jurisdiction of all cases under title 11." Section 1334(b) provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."

Section 157(a) permits the district courts to refer title 11 matters to the bankruptcy courts and provides as follows:

> (a) Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 should be referred to the bankruptcy judges for the district.

In this district, as in all others throughout the country, all cases arising under the Bankruptcy Code are automatically referred to the district's bankruptcy court. *See In re Bankruptcy Administration* (E.D.Pa. July 25, 1984).

■ The first issue presented by a jurisdiction question is whether the instant proceeding is "related to" the underlying bankruptcy case. Applying the following broad "related to" test enunciated by the Court of Appeals for the Third Circuit in *In re Bobroff,* 766 F.2d 797, 802 (3d Cir.1985); and *Pacor, Inc. v. Higgins,* 743 F.2d 984,

---

**2.** In its post-trial Brief, the State attempts to embellish the record made at the trial by adding details which are not inconsistent with, but are considerably more detailed, than the recitations by any of the witnesses at trial or in any doc-

uments admitted into the record. We are obliged to disregard these averments and caution counsel not to recite matters not in the record in the future. *See In re Mirkin,* 100 B.R. 221, 226 n. 5 (Bankr.E.D.Pa.1989).

994 (3d Cir.1984), we have little difficulty in concluding that the instant proceeding is very much related to the Debtor's bankruptcy case:

> [t]he usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy* ... An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate.

Perhaps the most extensive treatments of the scope of "related to" jurisdiction in the context of the claims of a Chapter 7 debtor against a non-creditor are included in the discussions of this court and the district court in *In re Littles*, 90 B.R. 669, 674–75 (Bankr.E.D.Pa.), *modified sub nom. Littles v. Lieberman*, 90 B.R. 700, 704–05 (E.D.Pa.1988); and *modified sub nom. Crossley v. Lieberman*, 90 B.R. 682, 690–91 (E.D.Pa.1988), *aff'd*, 868 F.2d 566 (3d Cir.1989). In those cases, it was argued that the debtors' respective adversary proceedings against the same private attorney for illegal debt collection practices were not related to the debtors' bankruptcy case because they were no-asset chapter 7 cases, and hence any recovery by the respective debtors would probably be exempt and unlikely to "end up in the pockets of [their] creditors." *Crossley, supra*, 90 B.R. at 690. In *Crossley*, the district court held that the defendant's "contention disregards the fact that plaintiff's cause of action is the property of her estate, given the broad scope of that term, even if the recovery is exempt. Consequently, a case based on that cause of action is a 'related' matter." *Id.*

The *Crossley* court thus concluded, *id.* at 691, that, under the Third Circuit's test, the debtor's "cause of action in this matter, arising as it did before the filing, is clearly a part of the estate and therefore a related matter within the meaning of 28 U.S.C. § 157(c)(1)."

In light of the foregoing, we have no doubt that the instant proceeding is "related to" the Debtor's bankruptcy case. If the Debtor is successful in recovering the Funds, this will clearly have an effect on her estate, as required by the Third Circuit's "related to" test. Such a result will not only have *an* effect on the Debtor's estate, but the effect will be substantial, because the Funds, or a portion thereof, may be the only non-exempt asset in her estate.

The bankruptcy court, however, may not hear *and determine* all matters arising under or related to a title 11 case. It may hear, but not determine, non-core proceedings such as those arising in *Crossley* and *Littles*. 28 U.S.C. § 157(c)(1). Pursuant to § 157(b)(1), a bankruptcy court may hear and determine only the non-exclusive list of "core proceedings" recited in 28 U.S.C. § 157(b)(2).

■ The Complaint in the instant proceeding asserts, principally, a cause of action arising under 11 U.S.C. § 362(h) on the ground that the Defendants violated the automatic stay. It is well-established that such a proceeding is core in nature under 28 U.S.C. §§ 157(b)(2)(A) and (b)(2)(G). *See, e.g., In re B. Cohen & Sons Caterers, Inc.*, 97 B.R. 808, 813 (Bankr.E.D.Pa.), *aff'd and remanded for clarification*, 108 B.R. 482 (E.D.Pa.1989); and *In re Stephen W. Grosse, P.C.*, 84 B.R. 377, 382 n. 4 (Bankr. E.D.Pa.), *aff'd*, 96 B.R. 29 (E.D.Pa.1989), *aff'd*, 879 F.2d 856, 857 (3d Cir.1989).

Even if we considered only the Debtor's request that the Funds be turned over to the Debtor, it seems clear that the instant proceeding is core in nature pursuant to 28 U.S.C. § 157(b)(2)(E). The Debtor's claim is that certain specific money, not merely monetary damages flowing from a cause of action as in *Crossley* and *Littles*, be turned over to her estate. Such a cause of action is clearly core in nature under 28 U.S.C. § 157(b)(2)(E). *See In re 222 Liberty Associates, 222 Liberty Associates v. Prescott Forbes Real Estate Corp.*, 110 B.R. 196, 199 (Bankr.E.D.Pa.1990); and *In re TM*

*Carlton House Partners, Ltd.,* 93 B.R. 859, 872 (Bankr.E.D.Pa.1988).

Therefore, we reject any contention that we lack subject matter jurisdiction over this proceeding. It is, in fact, a core proceeding which appears, unlike the claims in *Crossley* and *Littles,* capable of generating non-exempt assets available for distribution to the Debtor's creditors, part of which may well end up in the creditors' pockets.

**2. THE DEBTOR MUST, IN RESPONSE TO THE DEFENDANTS' MOTION, JOIN THE TRUSTEE AS A NECESSARY PARTY TO THIS PROCEEDING.**

The Defendants claim that it is exclusively the Chapter 7 Trustee, and not the Debtor, who has standing to pursue this adversary proceeding. While we agree that the Debtor must join the Trustee to pursue the instant proceeding, we will not dismiss the proceeding on this ground, as the Defendants request. Rather, we will require the Debtor to join the Trustee as a necessary party to this action.

It is well established that a debtor's estate is comprised of "all legal and equitable interests of the debtor in property as of the commencement of the case" wherever located or by whomever held. *See* 11 U.S.C. § 541(a)(1); and *Cain v. Hyatt,* 101 B.R. 440, 441–42 (E.D.Pa.1989). Section 541(a) of the Bankruptcy Code has been interpreted very broadly. The Supreme Court in *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 204, 103 S.Ct. 2309, 2313, 76 L.Ed.2d 515 (1983), held that, when interpreting § 541(a) and determining what constitutes property of the estate, that

> [b]oth the Congressional goal of encouraging reorganizations and Congress' choice of methods to protect secured creditors suggest that Congress intended a broad range of property to be included in the estate.

*See also Carlton House, supra,* 93 B.R. at 866 (debtor's interest in escrowed rental payments was property of the estate); and *In re Temp–Way Corp.,* 80 B.R. 699, 702 (Bankr.E.D.Pa.1987) (check in which debtor possessed only bare legal title was property of the debtor's estate).

Courts have consistently held that § 541(a) encompasses causes of action held by the debtor as of the commencement of the bankruptcy case. *Cain,* 101 B.R. at 442 and cases cited therein; *Littles, supra,* 90 B.R. at 705; and *Crossley, supra,* 90 B.R. at 690–91. *See also* 4 COLLIER ON BANKRUPTCY, ¶ 541.10, at 541–64 (15th ed. 1989) ("The estate created pursuant to section 541(a) includes causes of action belonging to the debtor at the time the case is commenced."); H.R.REP. NO. 595, 95th Cong., 1st Sess. 367–68 (1977) (hereinafter "H.R. REP."); and S. REP. NO. 989, 95th Cong., 2d Sess. 82–83 (1978) U.S.Code Cong. & Admin.News 1978, pp. 5787, 5868, 5869, 5963, 6322–6324 (hereinafter "S. REP.").

■ The general rule is that causes of action belonging to the debtor, including claims held by the debtor against a governmental entity, are property of the estate pursuant to § 541(a). *See* 4 COLLIER, *supra,* ¶ 541.10, at 541–69 ("As is true of other causes of action, claims against the Government are property which are included in the estate under section 541(a) ...").

■ Even though the cause of action set forth in the Complaint belong to the Debtor, it is the bankruptcy estate's Trustee who technically should pursue the cause of action. The Defendants claim that, because the Trustee did not bring the instant action against them nor is a party thereto, this matter is improperly before the court and must be dismissed. We note, however, that, when the issue of the Trustee's joinder is not raised, a debtor is free to pursue claims of the estate without the joinder of the Trustee. *See, e.g., Littles, supra;* and *Crossley, supra.* And, when the issue is raised, the Trustee may be joined and the matter may proceed.

Bankruptcy Code § 323 provides as follows:

> § 323. Role and capacity of trustee.
>
> (a) The trustee in a case under this title is the representative of the estate.

(b) The trustee in a case under this title has capacity to sue and be sued.

Relying upon § 323(a) and (b), the district court, in *Cain,* 101 B.R. at 442, held that "[t]he trustee in a case under Chapter 7 is the sole representative of the estate" and, "[a]s such, it is the trustee who 'has the capacity to sue and be sued.'" Thus, *Cain* holds that

> [o]n his appointment, the Trustee was vested with title of all of [the debtor's] property, including insurance policies and rights of action arising under them. Not only did the Trustee hold title to [the debtor's] assets; he was authorized, *exclusively,* to bring actions that could have been instituted by the bankrupt for the aggregation of assets and for the protection of creditors.

*Id.* (citing *Hanover Insurance Company v. Tyco Industries, Inc.,* 500 F.2d 654, 657 (3d Cir.1974) (emphasis added). *Accord, Krank v. Utica Mutual Insurance Co.,* 109 B.R. 668–69 (E.D.Pa.1990) (scope of § 541 is quite broad and includes most claims the debtor may have against others; once a cause of action becomes property of the estate, the debtor may not bring suit on that action unless the property has been abandoned by the trustee).

■ In his letter in response to our Order of January 17, 1990, requesting his views, the Trustee expressed little interest in the claim raised in this proceeding. His response might portend an intention to abandon the cause of action, pursuant to 11 U.S.C. § 554(a). If he did abandon the claim, then the Debtor would be free to pursue it. The Debtor could also move to order the Trustee to abandon it under 11 U.S.C. § 554(b). However, in light of the value which this court believes should be attributed to the Debtor's cause of action, this court may well exercise its discretion to deny abandonment on the Debtor's motion, *see In re Paolella,* 85 B.R. 974, 978–79 (Bankr.E.D.Pa.1988), or even upon the Trustee's motion. *See Midlantic National Bank v. New Jersey Department of Environmental Protection,* 474 U.S. 494, 500–

05, 106 S.Ct. 755, 758–61, 88 L.Ed.2d 859 (1986); and *Bryson v. Bank of New York,* 584 F.Supp. 1306, 1316 (S.D.N.Y.1984). We therefore believe that the proper procedure for resolving the issue of the lack of presence of the Trustee is not to await or even suggest that he or the Debtor pursue abandonment of the Debtor's claims. Rather, it is to simply require the Debtor to join the Trustee as an involuntary party plaintiff.[3]

■ We therefore will not dismiss this proceeding due to the Trustee's lack of presence as a party, because this technical defect is correctable by amending the Complaint to join the Trustee. In *In re Dinkins,* 79 B.R. 253, 257 (Bankr.E.D.Pa.1987), we refused to grant the Defendant's Motion to Dismiss when the Debtor failed to join, *inter alia,* the Trustee as a party because this defect was readily correctable by amendment of the Complaint to add the Trustee as a party.

In *Dinkins, supra,* the defendant moved to dismiss a breach of warranty Complaint filed by a Chapter 13 debtor under F.R.C.P. 12(b)(7) on the grounds that, *inter alia,* the debtor lacked standing to maintain the proceeding because she failed to join two indispensable parties, one being the Standing Chapter 13 Trustee. We held that the Trustee was in fact an indispensable party under F.R.C.P. 19(a)(2)(ii), the purpose of which is to protect a person already a party to an action from potential exposure to duplicate or multiple liability by requiring all of the parties with a potential joint claim to join in a single lawsuit. 3A J. MOORE, FEDERAL PRACTICE, ¶ 19.07 [2.–0], at 19–99; ¶ 19.07[2.–2], at 19–111 to 19–112 (2d ed. 1989). *See Harris v. Balk,* 198 U.S. 215, 226–27, 25 S.Ct. 625, 628, 49 L.Ed. 1023 (1905); *Gregory v. Stetson,* 133 U.S. 579, 586, 10 S.Ct. 422, 424, 33 L.Ed. 792 (1890); *In re Mosley,* 85 B.R. 942, 946–48 (Bankr.E.D.Pa.1988); and *Dinkins, supra,* 79 B.R. at 257. If the Trustee were not joined, it would have been conceivable that the Defendants in the instant matter, like the moving party in *Dinkins,* "could later be subjected to liability at the hands

---

**3.** There are other, less formal ways to resolve this problem. For example, in *Cain,* the Debtor moved, with the Trustee's joinder, to appoint special counsel to pursue the action.

of the Trustee for the same claims asserted by her on her own behalf here." *Id.*

However, in denying the Motion to Dismiss on this basis, we stated in *Dinkins, id.,* that

the instant Motion [to Dismiss] can be granted only if we deem that the Movant's positions on the issues raised by it are not only meritorious, but incapable of correction by amendment. If amendments will conceivably cure the defects, then we should not dismiss her Complaint, but allow the Debtor to amend her Complaint to make the necessary corrections.

We concluded in *Dinkins, id.* at 258, that, because the debtor's claim was not abandoned by the Chapter 13 trustee, the Chapter 13 trustee must be joined as a plaintiff in the debtor's action. We noted that an express waiver by the trustee of any claim of the estate against the defendant could justify his omission, but, finding no such express waiver, concluded that the "joinder of the Trustee is also necessary to protect the Movant from multiple liability." *Id.*

As in *Dinkins,* the Trustee in the instant matter has not expressly waived any claim of the estate against the Defendants. The Trustee has come close to abandoning the Debtor's claim by stating that he views the claim as valueless and will not pursue it, but he has not expressly abandoned it as required by § 554(a). Absent such abandonment, the Trustee must be joined in the Debtor's action. *See also, e.g., In re Frymire,* 87 B.R. 856, 857 & nn. 1 & 3 (Bankr.E.D.Pa.1988) (joinder of trustee, even as a party defendant, eliminates any contention that the Trustee's absence bars the debtor from proceeding).

3. THE DEBTOR'S ACTION AGAINST THE DEFENDANTS IS NOT BARRED BY THE ELEVENTH AMENDMENT.

▆ The Bankruptcy Code, at 11 U.S.C. § 106, thus defines the circumstances in which the immunity of a governmental unit is waived in a bankruptcy case, and delineates the scope and extent of such waiver:

§ 106. Waiver of sovereign immunity

(a) A governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose.

(b) There shall be offset against an allowed claim or interest of a governmental unit any claim against such governmental unit that is property of the estate.

(c) Except as provided in subsections (a) and (b) of this section and notwithstanding any assertion of sovereign immunity—

(1) a provision of this title that contains "creditor," "entity," or "governmental unit" applies to governmental units; and

(2) a determination by the court of an issue arising under such a provision binds governmental units.

The legislative history, helpful in interpreting § 106, states:

Section 106 provides for a limited waiver of sovereign immunity in bankruptcy cases. Though Congress has the power to waive sovereign immunity for the Federal government completely in bankruptcy cases, the policy followed here is designed to achieve approximately the same result that would prevail outside of bankruptcy. Congress does not, however, have the power to waive sovereign immunity completely with respect to claims of [a] bankrupt estate against a State, though it may exercise its bankruptcy power through the supremacy clause to prevent or prohibit State action that is contrary to bankruptcy policy.

H.R.REP. at 317; S.REP. at 29–30, U.S. Code Cong. & Admin.News 1978, pp. 5814, 5816, 6274. As defined in § 101(26) of the Bankruptcy Code, "governmental unit" means, *inter alia,* a "State, Commonwealth," and "a department, agency, or instrumentality of ... a State, Commonwealth ...".

Clearly, the Defendants are individuals, and are not, in themselves, "governmental

units." However, the instant suit is rather plainly brought against the Defendants in their respective capacities as state officials. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office [which] ... is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, — U.S. ——, 109 S.Ct. 2304, 2311, 105 L.Ed.2d 45 (1989). Clearly, New Jersey is a State. Therefore, this is an action against a "governmental unit."

On June 23, 1989, the Supreme Court handed down its decision in *Hoffman*. In so doing, the Court, invoked the proscriptions of the Eleventh Amendment, and limited the scope of the waiver of sovereign immunity provided for in § 106(c)(2), thereby overruling the previous law of the Third Circuit that § 106(c)(2) reflected a general waiver of sovereign immunity. *See Vazquez v. Pennsylvania Dep't of Public Welfare*, 788 F.2d 130, 133 (3d Cir.), *cert. denied*, 479 U.S. 936, 107 S.Ct. 414, 93 L.Ed.2d 365 (1986).

We had occasion to measure the parameters of the *Hoffman* decision in *In re St. Joseph's Hospital*, 103 B.R. 643, 649–52 (Bankr.E.D.Pa.1989). There, we began by observing that the Court did not suggest that § 106(c)(2) was of no effect whatsoever. *Id.* at 650. Rather, it stated that § 106(c)(2) "is more indicative of declaratory and injunctive relief than of monetary recovery," *Hoffman*, 109 S.Ct. at 2828, leading us to conclude that § 106(c)(2) *did* provide for a valid waiver of immunity, irrespective of the presence of the Eleventh Amendment, "insofar as the relief sought against the state in the course of a bankruptcy is declaratory or injunctive relief, or any relief short of a 'monetary recovery.'" *St. Joseph's*, 103 B.R. at 650.

█ It is clear that obtaining "prospective injunctive relief" against a state is not a "monetary recovery" from the state which is barred by the Eleventh Amendment. *Missouri v. Jenkins*, — U.S. —, 109 S.Ct. 2463, 2466–69, 105 L.Ed.2d 229 (1989). We further suggested, in *St. Joseph*, 103 B.R. 650, 652, nn. 4, 6, that

restitution, which does not constitute "money damages," *Bowen v. Massachusetts*, 487 U.S. 879, 108 S.Ct. 2722, 2731–36, 101 L.Ed.2d 749 (1988), may not be within the scope of a "monetary recovery" barred from waiver under § 106(c)(2) by the Eleventh Amendment.

Our actual decision in *St. Joseph's* was that, because one of the state's agencies had filed a proof of claim in the debtor's bankruptcy, the state's sovereign immunity was abrogated, 103 B.R. at 651–52, another of the situations in which the Court, in *Hoffman*, concluded that § 106(c) would effect an elimination of sovereign immunity. Since the State has filed no proof of claim here, the result reached in *St. Joseph's* is easily distinguishable. However, we held that exceptions to sovereign immunity identified by the court in *Hoffman* must be read broadly in order to prevent the conclusion that states could "completely ignore the consequences of a bankruptcy filing with impunity." *Id.*

█ The instant case presents two situations in which it is necessary for us to determine whether the Court in *Hoffman* meant to allow states to ignore the consequences of a bankruptcy. The first concerns the enforceability of the automatic stay against a state. We conclude, as did our colleague, Judge Fox, by implication, in *In re Colon*, 102 B.R. 421, 430–31 (Bankr. E.D.Pa.1989), that the Court, in *Hoffman*, could not have possibly read the Bankruptcy Code, even in light of the Eleventh Amendment, as abrogating the effect of 11 U.S.C. § 362(a) as to governmental units. In *Colon*, Judge Fox held that a governmental unit, the Philadelphia Traffic Court, could be enjoined from violating the automatic stay. 102 B.R. at 429. Further, holding that the violations of § 362(a) in that instance were willful, Judge Fox, while reserving ruling, suggested that compensatory damages and attorneys' fees might be awarded against the Traffic Court under § 362(h) as well. *Id.* at 429–30.

Congress clearly intended that § 362(a) would apply generally to governmental units. Otherwise, 11 U.S.C. §§ 362(b)(1),

(b)(4), (b)(5), and (b)(9), excepting specific types of actions of governmental units from the scope of the automatic stay, *see* pages 703–06 *infra,* would have been superfluous.

Therefore, we join Judge Fox in concluding that governmental units must be answerable for violations of the automatic stay irrespective of the presence of the Eleventh Amendment. Declaratory and injunctive relief undoing and voiding acts of governmental units in violation of the automatic stay therefore must be remedies available to bankruptcy courts.

Hence, we conclude that the Debtor may pursue her claims against the State for violation of the automatic stay. Since we conclude that the violation of the stay here was willful but did not result in any damages to the Debtor, *see* pages 706–707 *infra,* we do not reach the most difficult of the issues upon which Judge Fox reserved decision in *Colon:* whether monetary damages against the State under § 362(h) are precluded due to the impact of the Eleventh Amendment.

■ However, a further immunity issue which is presented by this proceeding is whether compelling the State to turn over property of the Debtor's estate to the Trustee or the Debtor herself is barred by the dictates of the Eleventh Amendment. We consider this question about equal in difficulty to the question of whether a governmental unit may violate the automatic stay with impunity. The relief in a turnover proceeding, like the relief in a § 362(h) proceeding which prevents the State from violating the automatic stay, is declaratory and injunctive in nature, as long as specific property is the focus, even though that property, as here, may be money. We do not believe that the relief sought from the State is impermissible under the Eleventh Amendment unless the relief sought is monetary *damages,* not merely money which is part of a specific fund which is property of the debtor's estate.

As in the case of damages under § 362(h), a more difficult question is presented when the relief sought is monetary damages for injuries proximately caused by the state's retention of property of the estate. Ancillary penalties to compensate for delay may be permissibly recovered. *Missouri v. Jenkins, supra,* 109 S.Ct. at 2468–69. Attorneys' fees incurred by the plaintiffs' counsel in the enforcement of injunctive or declaratory relief against a state are recoverable. *Id.* at 2466–67. *See also Hutto v. Finney,* 437 U.S. 678, 689–93, 98 S.Ct. 2565, 2572–74, 57 L.Ed.2d 522 (1978).

At this juncture, we need reach only the issue of whether the Eleventh Amendment bars a turnover action against the State to recover specific property of the estate. We hold that it does not, and that therefore the Eleventh Amendment does not bar the Debtor from seeking to enforce the automatic stay against the State nor from seeking to recover the Funds from it.

4. THE STATE'S FORFEITURE ACTION IS SUBJECT TO THE AUTOMATIC STAY AND THEREFORE THE ORDER OF JULY 19, 1989, IS VOID AND THE STATE MAY NOT PROCEED WITH THE FORFEITURE ACTION UNLESS AND UNTIL IT OBTAINS RELIEF FROM THE STAY TO DO SO.

Pursuant to 11 U.S.C. § 362(a), the automatic stay is imposed as of the filing of the bankruptcy petition. Section 362(a) provides as follows:

§ 362. Automatic stay

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, ... operates as a stay, applicable to all entities of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of

a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

. . . . .

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title; ...

The legislative history of § 362(a) provides, in pertinent part, as follows:

The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressure that drove him into bankruptcy.

H.R.REP. at 343; S.REP. at 54–55 U.S. Code Cong. & Admin.News pp. 5840, 5841, 6299. *See also, e.g., Midlantic National Bank, supra,* 474 U.S. at 503, 106 S.Ct. at 760; and *In re Clark,* 69 B.R. 885, 889, *modified,* 71 B.R. 747 (Bankr.E.D.Pa.1987).

Section 362(a) freezes the rights of creditors as of the filing date "in order to protect against the piecemeal distribution of the bankruptcy estate." *In re Adams,* 106 B.R. 811, 829 (Bankr.D.N.J.1989). The automatic stay provisions ensure that claims against the debtor and the debtor's estate are resolved in an orderly fashion in accordance with Bankruptcy Code's priority provisions, and to prevent a " 'chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts.' " *In re Holtkamp,* 669 F.2d 505, 508 (7th Cir.1982), quoting *In re Frigitemp Corp.,* 8 B.R. 284, 289 (S.D.N.Y.1981). *Accord, Association of St. Croix Condominium Owners v. St. Croix Hotel Corp.,* 682 F.2d 446, 448 (3d Cir.1982), quoting H.R.REP. at 340); and *United States v. Seitles,* 106 B.R. 36, 37 (S.D.N.Y.1989).

We have noted that "the automatic stay attaches and nullifies actions taken in violation of it even if the Debtor fails to notify the creditor proceeding against the Debtor about the filing." *In re Boston Business Machines,* 87 B.R. 867, 870 (Bankr.E.D.Pa.1988). *Accord, e.g., In re Ward,* 837 F.2d 124, 126 (3d Cir.1988); *222 Liberty Associates, supra,* 110 B.R. at 200; *In re University Medical Center,* 93 B.R. 412, 417 (Bankr.E.D.Pa.1988); *Clark, supra,* 69 B.R. at 888–90; and *In re Stephen W. Grosse, P.C.,* 68 B.R. 847, 850 (Bankr.E.D.Pa.1987). The court is obliged to raise the issue of the application of the automatic stay *sua sponte. St. Croix, supra,* 682 F.2d at 447–48; and *222 Liberty Associates, supra,* 110 B.R. at 200. For this reason, we proceed to resolve the § 362 issues arising in this proceeding even prior to the joinder of the Trustee or the subsequent potential supplemental hearing.

The fact that a creditor violated the stay without notice, "means only that his action was not willful and therefore not contemptuous." *Grosse, supra,* 68 B.R. at 850. Most importantly, once a creditor has notice or other knowledge of the bankruptcy filing, the creditor has a duty to restore the status quo that existed at the time that the stay became effective. *Id.;* and *Boston Business Machines,* 87 B.R. at 871. In other words, the creditor must reverse its post-petition proceedings against property of the estate without the debtor having to seek the intervention of the bankruptcy court. *See Grosse, supra,* 68 B.R. at 850. *See also University Medical Center, supra,* 93 B.R. at 417; and *In re Carlsen,* 63 B.R. 706, 710 (Bankr.C.D.Cal.1986).

One of the contentions of the Defendants here appears to be a misguided notion that the State's post-petition actions are protected because they occurred before its agents, specifically Draper, had knowledge of the stay. We are prepared to conclude, as a finding of fact, that Draper had no knowledge of the Debtor's bankruptcy filing until after the Default Judgment in the Forfeiture Action was effectively entered. However, this fact does not protect the Default Judgment from invali-

dation since the stay in fact did apply to this proceeding.

■■■■ The Defendants next argue that, under New Jersey law, title to the Funds vested in the State at the time of seizure and that the Forfeiture Action was merely a proceeding to confirm the State's title to the Funds, the validity of which "related back" to the time of seizure. Therefore, it claims that the Default Judgment in the Forfeiture Action was of little consequence, because it already owned the Funds.

Although at trial the Defendants contended that they had ample New Jersey bankruptcy law authority for these assertions, the only bankruptcy case which they cite, *In re Reid,* 60 B.R. 301 (Bankr.D.Md. 1986), interprets a Maryland statutory scheme apparently identical to that of New Jersey in a manner directly contrary to the principles urged by the Defendants. In fact, *Reid* is one of three Maryland cases, the only bankruptcy cases which we could locate addressing the impact of a bankruptcy filing upon a forfeiture action. The other two cases are *In re Ryan,* 32 B.R. 794 (Bankr.D.Md.1983) (*"Ryan II"*); and *In re Ryan,* 15 B.R. 514 (Bankr.D.Md.1981) (*"Ryan I"*).

The Maryland forfeiture statute construed in these cases provides as follows:

297. Forfeitures and seizures generally; motor vehicles.

(a) Property subject to forfeiture.—The following shall be subject to forfeiture and no property right shall exist in them:

 · · · · ·

(6) All money, coin or currency which has been used or intended for use in connection with the illegal manufacture, distribution, dispensing or possession of controlled dangerous substances or controlled paraphernalia. All money, coin or currency which is found in close proximity to contraband, controlled dangerous substances, controlled paraphernalia, or forfeitable records of the importation, manufacture, or distribution of controlled dangerous substances are pre-

sumed to be forfeitable under this paragraph.

 · · · · ·

This money or currency shall be deemed to be contraband of law and all rights, title and interest in and to the money or currency shall immediately vest in and to Baltimore City or the county in which it was seized ...; and no such money or currency shall be returned to any person claiming it, or to another person, except in the manner hereinafter provided;

MD.ANN.CODE art. 27, § 297 (1985 Cumulative Supplement).

The applicable New Jersey forfeiture statute provides as follows:

Property subject to forfeiture

a. Any interest in the following shall be subject to forfeiture and no property right shall exist in the:

 (1) Controlled dangerous substances, ... shall be designated prima facie contraband.

 · · · · ·

 (4) Proceeds of illegal activities, including, but not limited to, property or money obtained as a result of the sale of prima facie contraband as defined in subsection a.(1), ...

Vesting of title in forfeited property

Title to property forfeited under this Chapter shall vest in the entity funding the prosecuting agency involved at the time the item was utilized illegally, or, in the case of proceeds, when received.

N.J.S. 2C:64–1, 2C:64–7.

In *Reid,* the trustee in an involuntary Chapter 7 case filed a Complaint for the turnover of $35,595 seized from the debtor's residence by police officers in Montgomery County, Maryland ("the County"), pursuant to a search and seizure warrant, on September 19, 1984. The monies were found in a dresser drawer underneath approximately six (6) ounces of cocaine. The debtor was arrested at the same time on a charge of possession of cocaine with intent to distribute. *Id.* at 301, 306. The County filed a post-petition action seeking forfeiture of the monies, asserting ownership of

same by virtue of the Maryland statute *quoted* at page 701 *supra*.

The *Reid* court, 60 B.R. at 304–05, concluded that the right to contest the State's attempted forfeiture of the monies was property of the debtor's estate pursuant to 11 U.S.C. § 541(a)(1). This is consistent with our conclusion, at pages 695–696 *supra*, that the Debtor's claim against the Defendants is property of the estate under § 541(a). *Accord, Ryan I, supra*, 15 B.R. at 517–18.

The *Reid* court had no difficulty in concluding that the County's forfeiture action was stayed by virtue of the bankruptcy filing. 60 B.R. at 302. The court then proceeded to conduct the forfeiture hearing and determined that $3,000 of the seized funds were not attributable to illegal activities and ordered that sum turned over to the Trustee. *Id.* at 308.

The *Reid* court's summary treatment of the § 362 issue appears attributable, in large part, to its adoption of the same court's reasoning on this point in *Ryan I*. There, the bankruptcy court considered at length, but rejected, a number of arguments by the State and held that any action by the State to enforce a forfeiture in a forum other than the bankruptcy court against either the debtor or property of the estate was stayed by § 362(a) of the Code. 15 B.R. at 517–19.

In that case, the Maryland State Police entered a hotel room and seized illegal drugs and drug paraphernalia and the disputed $5,562.00 in money belonging to the debtor, one of the occupants of the room. *Id.* at 516. On March 13, 1980, the debtor filed a Chapter 7 bankruptcy petition. The Attorney General filed an action on June 3, 1980, in state court to have the money forfeited to the State. *Id.* at 517. The state then filed a complaint seeking a declaratory judgment with respect to the effect of the automatic stay upon the forfeiture action. *Id.* at 515–16.

The court concluded that the debtor retained at least some legal or equitable interest in the seized monies which was protected by the stay. *Id.* at 517. The court continued,

[a]lthough the actual recovery of the money by the Debtor may be contingent and dependent upon his future success at a hearing on the merits of the forfeiture action, the right to claim the money after seizure, recognized by the provisions of the state statute, is an interest in property that becomes part of the bankruptcy estate (footnote omitted).

*Id.* at 517–18. The State's forfeiture action, therefore, was stayed. *Id.* at 518.

In *Ryan II*, the state filed a motion for relief from the automatic stay to continue the forfeiture action which *Ryan I* held was stayed by § 362(a). 32 B.R. at 795. The State argued, as it had in *Ryan I*, that the debtor retained no interest in the seized monies because title to the monies had vested in the state at the time of seizure. The court rejected the state's "retroactive vesting" theory and reemphasized that the debtor's claim against the State for the seized funds was property of the estate. *Id.* at 797. The court ultimately lifted the stay to permit the State to proceed with the forfeiture action, although it restricted that proceeding to merely making a determination of whether the forfeiture was proper. *Id.* The court further indicated that, after that determination was made, the monies would have to be turned over to the Trustee, irrespective of the outcome. *Id.* at 798. The determination of whether the funds were contraband was apparently believed to be crucial only in ascertaining whether the funds would ultimately be turned over by the Trustee to the debtor or not. *Id.*

The Defendants' argument that its mere seizure of the Funds in issue deprives the Debtor's estate of an interest in them raises serious due process questions. We recognize that the Supreme court, in *Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 676–80, 94 S.Ct. 2080, 2088–90, 40 L.Ed.2d 452 (1974), upheld forfeiture proceedings against a general due process attack. However, the Court stated that, when an owner of property "was uninvolved and unaware of the wrongful activity" for which property was seized and "had done all that reasonably could be expected to prevent the proscribed use of his proper-

ty," then it "would be difficult to conclude that forfeiture served legitimate purposes and was not unduly oppressive." *Id.* at 689–90, 94 S.Ct. at 2095. *See also United States v. Parcel of Real Property Known as 6109 Grubb Rd., etc.*, 886 F.2d 618, 622–26, *reh'g denied*, 890 F.2d 659 (3d Cir. 1989) (a forfeiture proceeding must meet minimum due process standards; forfeiture not permitted if illegal use of property occurs without knowledge or consent of innocent spouse who owns property by entireties with party convicted of illegal use of property).

In the instant factual matrix, not only was there no evidence presented that the Debtor was involved or aware of any criminal activity which resulted from the use of her property, there was no evidence that she or anyone else *was* involved in any criminal activity with the Funds. No charges were brought against anyone. The Debtor's car was returned. The facts are therefore a far cry from those of *Reid* and *Ryan*, where the debtors were found with contraband proximate to the seized funds. We are left with the distinct impression that the fact that the Debtor was West Indian created an unsupported presumption that she was involved in drug trafficking.

We also do not think that it is a fair answer to an indigent woman seeking to recover what she claims is her money (and she has a mortgage on her home from the credit union from which she claims to have borrowed it) to require her to hire counsel and establish that the Funds were hers in a foreign jurisdiction as a condition for the recovery of her money. The ordinary presumption in the law is that a party seeking to retain the property of another must prove its right to do so. *See Swarb v. Lennox*, 314 F.Supp. 1091, 1094–95 (E.D. Pa.1970) (three-judge court), *aff'd*, 405 U.S. 191, 92 S.Ct. 767, 31 L.Ed.2d 138 (1972) (placing burden upon a debtor to open a confessed judgment obtained without notice and an opportunity to be heard is constitutionally impermissible); and *In re Souders*, 75 B.R. 427, 433 (Bankr.E.D.Pa. 1987) (the basic principle of the adversary system is that an alleged obligee must

prove the validity of his claim against the obligor before taking the latter's property). Here, it is the State itself which is claiming a right to funds belonging to private citizens, the only legitimate claimant for which appears to be the Debtor. We believe that it would be "unduly oppressive" to accept the State's argument that its mere seizure of the Funds, possibly without even colorable justification, ripens into vested ownership of same against which the Debtor can prevail only if she meets a stiff burden of proof in that State's courts. We are therefore not receptive to the State's argument that it has rights in the Funds which transcend the scope of the automatic stay. An assertion of such rights appears inconsistent with due process of law.

In conclusion, the automatic stay provisions of § 362(a) apply to governmental units in general and to Defendants in this proceeding in particular. The mere occurrence of the July 21, 1989, hearing which resulted in the entry of the Default Judgment, whether or not the Defendants knew of the Debtor's bankruptcy filing, violated the automatic stay. Hence, the Default Judgment must be stricken and the Forfeiture Action is stayed, unless one of the § 362(b) exceptions applies to remove the Defendant's action from the force of the automatic stay.

5. THE DEFENDANTS' ACTION IS NOT EXCEPTED FROM THE AUTOMATIC STAY BY ANY SECTION OF § 362(b).

Congress provided several specific exceptions to the principle that the automatic stay generally applies to governmental units. *See* 11 U.S.C. §§ 362(b)(1), (b)(4), (b)(5), and (b)(9). The Defendants claim that their action falls under § 362(b)(4), which provides as follows:

(b) The filing of a petition under section 301, 302 or 303 of this title, ... does not operate as a stay—

. . . . .

(4) under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a

governmental unit to enforce such governmental unit's policy or regulatory power;

In carving out the § 362(b)(4) exception, "Congress intended to combat the risk that defendants could 'frustrate necessary governmental functions' by seeking refuge in bankruptcy court." *Seitles, supra,* 106 B.R. at 38, quoting *United States v. Nicolet, Inc.,* 857 F.2d 202, 207 (3d Cir.1988).

Courts interpreting § 362(b)(4) generally construe the police and regulatory powers exception narrowly.[4] *See, e.g., Seitles, supra,* 106 B.R. at 38; *In re Cash Currency Exchange, Inc.,* 37 B.R. 617 (N.D.Ill.1984), *aff'd,* 762 F.2d 542 (7th Cir.), *cert denied sub nom. Fryzel v. Cash Currency Exchange, Inc.,* 474 U.S. 904, 106 S.Ct. 233, 88 L.Ed.2d 232 (1985); *In re Beker Industries Corp.,* 57 B.R. 611 (Bankr.S.D.N.Y.1986); *In re Wellham,* 53 B.R. 195, 197 (Bankr.M. D.Tenn.1985); *In re Farmers & Ranchers Livestock Auction, Inc.,* 46 B.R. 781 (Bankr.Ark.1984); *In re Colin, Hochstin Co.,* 41 B.R. 322 (Bankr.S.D.N.Y.1984); and *In re Heckler Land Development Corp.,* 15 B.R. 856 (Bankr.E.D.Pa.1981). *But see Penn Terra Limited v. Department of Environmental Resources,* 733 F.2d 267, 273 (3d Cir.1984) (§§ 362(b)(4) and (b)(5) interpreted liberally in enforcing state environmental protection laws); *In re Scott,* 106 B.R. 698, 699–700 (S.D.Ala.1989) (liability on commercial bail bond exempt from stay under §§ 362(b)(4) and (b)(5)); and *In re Hanson,* 71 B.R. 193, 194 (Bankr.E.D.Wis. 1987) (attorney disciplinary proceeding not stayed by reason of § 362(b)(4)).

Again, reference to legislative history is helpful in understanding § 362(b)(4):

Section 362(b)(4) indicates that the stay under § 362(a)(1) does not apply to affect the commencement or continuation of an action or proceeding by a governmental unit to enforce the governmental unit's police or regulatory power. This section is intended to be given a narrow construction in order to permit governmental units to pursue actions to protect the public health and safety and not to apply to actions by a governmental unit to protect a pecuniary interest in property of the debtor or property of the estate.

H.R.REP. at 343; S.REP. at 52.

The Defendants claim that their post-petition action of obtaining a default judgment resulting in the forfeiture of the Funds was an exercise of their police powers to protect the public health and safety and, therefore, not subject to the automatic stay pursuant to § 362(b)(4). The question before us is the same that was before the *Seitles* court:

whether the present governmental action ... is a "necessary governmental function" geared towards the "protect[ion of] the public health and safety," or instead, whether this claim is a proprietary governmental function aimed at the protection of pecuniary interests.

106 B.R. at 38.

In determining whether the Forfeiture Action was an exercise of the State's police and regulatory power, we must scrutinize the action under the "pecuniary purpose" and "public policy" tests. The Court of Appeals for the Sixth Circuit concisely states these two tests for determining whether a governmental action falls within the automatic stay or is excepted under the police power exception:

---

4. Section 362(b)(5) provides a related exception to the automatic stay for governmental agencies. The Defendants have not claimed that their actions are excepted from the stay under this subsection. Nevertheless, we observe that § 362(b)(5), in pertinent part, provides as follows:

(b) the filing of a petition under section 301, 302, or 303 of this title, does not operate as a stay—

(5) under subsection (a)(1) of this section, of the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police and regulatory power.

Under the pecuniary purpose test, reviewing courts focus on whether the governmental proceeding relates primarily to the protection of the governments pecuniary interest in the debtors property, and not to matters of public safety. Those proceedings which relate primarily to matters of public safety are excepted from the stay. Under the public policy test, reviewing courts must distinguish between proceedings that adjudicate private rights and those that effectuate public policy. Those proceedings that effectuate a public policy are excepted from the stay.... Under either test, the state's actions should have been stayed under 11 U.S.C. § 362 if the state was seeking a monetary sum merely as collection of a debt or as compensation for reclamation it had already performed.

*In re Commerce Oil Co.*, 847 F.2d 291, 195 (6th Cir.1988). *See also NLRB v. Edward Cooper Painting, Inc.*, 804 F.2d 934, 942 (6th Cir.1986); and *Seitles,* 106 B.R. at 38.

As a guide, some courts examine whether the governmental unit in question is "engaging in an action which affects the immediate parties to the action or whether it concerns a wider group subject to the authority of the governmental unit." *In re Chateaugay Corp.,* No. 86B 11270, slip op. at 48 (Bankr.S.D.N.Y. Sept. 29, 1988), quoting *In re Wellham,* 53 B.R. 195, 197 (Bankr.M.D.Tenn.1985). *See also, Seitles,* 106 B.R. at 39 ("[T]he presence or absence of continuing harm as well as a threat to public health is relevant in determining the applicability of § 362(b)(4)").

In *Seitles,* the debtor was convicted of conspiring with and bribing an officer of the United States Government Printing Office with respect to certain printing contracts. The Government brought a claim against the debtor under the False Claims Act. The court held that the Government's action was not excepted from the automatic stay under § 362(b)(4) because the debtor's actions presented no threat to public health or safety. *Id.* at 39. "The fraudulently obtained printing contracts posed only a monetary, not safety, threat to the government." *Id.* Furthermore, as the debtor was no longer supplying the printing services to the government, the government's action "does not serve to stop any continuing misconduct by the debtor." *Id.*

The *Seitles* court concluded that the government's claimed public policy reasons for pursuing the False Claims Act action—reimbursement of damages incurred by the Government because of the debtor's actions and deterrence of similar conduct by the debtor and others—were not the Government's primary motivation. *Id.* In reaching this conclusion, the court found that the restitution and deterrence factors had been largely satisfied in a separate criminal action in which the debtor was sentenced to a suspended prison term, community service, and restitution of $44,000 to the government. *Id.* at 39–40.

In *Colon, supra,* our colleague, Judge Fox, confronted a similar issue. In two cases considered together, Chapter 13 debtors sought injunctive and declaratory relief and damages from the post-petition attempts of the Philadelphia Traffic Court to collect traffic fines by threatening to suspend the drivers' licenses of the respective debtors. 102 B.R. at 423.

Judge Fox concluded that, that while the automatic stay did not preclude the traffic court from issuing citations and determining the guilt or innocence of the driver, "[o]nce guilt is established and a fine is imposed, ..., [the defendants were] not free to enforce collection of the fine by revoking or threatening to revoke driving privileges or by threatening arrest." *Id.* at 428. The court thus differentiated between revoking a driver's license to remove an unsafe driver from the road and revoking it merely to force the driver to pay a fine, as it found had been done in the case of the *Colon* debtors:

If state law mandates the suspension or revocation of driving privileges due to the nature of the infraction ..., irrespective of whether the driver promptly pays a fine, the bankruptcy code will not interfere with the exercise of this police power. That is, the automatic stay *does not* preclude the state from removing unsafe drivers from the road.

Conversely, the Code does prevent the state from utilizing its power to suspend driving privileges in order to collect its fines.

*Id.* By way of contrast, by seeking to revoke the debtors' licenses merely to collect fines, the traffic court was found to have engaged in collection activities in violation of the automatic stay. *Id.*

In light of this authority, we conclude that the Forfeiture Action in the instant case is not excepted from the automatic stay pursuant to § 362(b)(4). The Forfeiture Action was not intended to end a continuing threat to public health and safety like the action at issue in *Penn Terra, supra;* nor would its suspension threaten the integrity of the criminal justice system, as was found to be the case in *Scott, supra;* nor would it subject the public to irresponsible attorneys, as would staying the proceeding at issue in *Hanson, supra.* As we noted at pages 702–703 *supra,* the evidence presented thus far suggests, moreover, that the State's actions were "unduly oppressive," and without basis.

The Defendants have stated no public policy reasons justifying the completion of the Forfeiture Action. They do not claim that the Funds are reimbursing them for damages incurred by the State or that the Forfeiture Action is necessary to deter similar conduct by the debtor and others. In fact, it is unclear what "conduct" the Defendants would be desirous of deterring in this situation, given the lack of evidence supporting the retention of the Funds presented thus far by the Defendants and the fact that no criminal action has ever been brought or accordingly is pending against any individual in reference to the Funds.

We thus conclude that the Forfeiture Action is not excepted from the automatic stay by force of § 362(b)(4). Therefore, the Default Judgment obtained in that Action is null and void because it was obtained in violation of the automatic stay, and future proceedings in the Forfeiture Action must be stayed. For reasons set forth at page 700 *supra,* we believe it appropriate to enter a final order addressing this aspect of the proceeding at this juncture.

6. ATTORNEYS' FEES FOR HER COUNSEL, BUT NO OTHER DAMAGES, WILL BE AWARDED TO THE DEBTOR UNDER 11 U.S.C. § 362(h).

 Another issue related to the automatic stay and thus which we are prepared to consider at this juncture is the potential for damages against the Defendants for violation of the automatic stay. We are not now considering the issue of the turnover of the Funds that may be ordered after the Debtor amends her Complaint, but rather the issue of whether damages over and above the return of the Funds could be awarded against the Defendants in connection with the State's violation of the automatic stay. The Bankruptcy Code, at 11 U.S.C. § 362(h), thusly provides for the imposition of liability upon an entity who willfully violates the stay:

(h) An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

We have ascribed to a liberal interpretation of the term "willful violation" in the context of § 362(h). As long as a party is cognizant of the bankruptcy filing and proceeds with an action which the court later finds is violative of the automatic stay, damages under § 362(h) may be imposed. *See In re McLaughlin,* 96 B.R. 554, 559 (Bankr.E.D.Pa.1989), *aff'd sub nom. McLaughlin v. Fireman's Fund Mortgage Corp.,* C.A. Nos. 89–2972, 89–3672, 89–3748 (E.D.Pa. Sept. 18, 1989). Thus, a creditor who engages in conduct which might be violative of the automatic stay is encouraged to seek court guidance concerning the stay's application before proceeding with an action potentially subject to the stay, as the State of Maryland did before proceeding in *Ryan I.*

 We have found that Draper was not informed of the bankruptcy filing before the Default Judgment was entered.

The Debtor has not undertaken to establish that any other State official was apprised of the filing. Therefore, the Defendants cannot be liable under § 362(h) for obtaining this judgment in violation of the stay.

 However, the Defendants' failure to undo the consequences of the violation of the automatic stay effected by the entry of the Default Judgment subsequent to their all becoming aware of the bankruptcy filing by reason of their joinder in this proceeding constitutes a willful act which may give rise to the elements of damages set forth in § 362(h) against all of them. *McLaughlin, supra,* 96 B.R. at 561. We further observed, in *McLaughlin,* that "counsel for a debtor who is jeopardized in any significant manner by a stay violation and reasonably resorts to court to remedy the violation, should recover at least some measure of" attorneys' fees. *Id.*

In *McLaughlin,* the debtor admitted that she suffered no damages from the stay violation, *id.* at 556, but we nevertheless awarded a modest sum to the debtor's counsel for attorney's fees, because we found that the debtor's rights would not have been vindicated but for the litigation initiated by her counsel. *Id.* at 561–62. We also concluded that the good faith of the creditor in refusing to recognize the validity of the stay was not a defense to the claim of the debtor's counsel for attorneys' fees. *Id.* at 562–63.

It may be that the entry of the Default Judgment means very little in itself in a practical sense. If.so, this is all the more reason why the simple step of their asking the New Jersey court to vacate the Default Judgment, once the Defendants become aware of the bankruptcy filing, could have easily been done. It is, however, apparent to us that the Defendants did not do so because they believed that they had no obligation to do so, and that they were acting to protect their belief that, on July 21, 1989, the issue of who owned the Funds was determined with finality in the State's favor. It is quite clear to us that, but for the institution of this proceeding, the State would have proceeded to retain the $7,990 and contended that the disposition in its favor in the Default Judgment was res judicata. That this was all done in good faith is not doubted: there is admittedly very little authority regarding the obligation of the prosecution when a party having a claim to forfeited funds files bankruptcy. However, as *McLaughlin* establishes, the good faith of the stay violator is not a defense to the remedies set forth in § 362(h).

 The Debtor has proven no specific damages as a result of the Defendants' failure to vacate the Default Judgment. The dispatch of the letter to her informing her of the entry of the Default Judgment, if arguably violative of the stay in itself, is too technical a violation to merit an award of damages. *See Brown v. Pennsylvania State Employees Credit Union,* 851 F.2d 81, 84–85 (3d Cir.1988). *See also In re Whitt,* 79 B.R. 611, 614–15 (Bankr.E.D.Pa. 1987).

 However, we believe that, as in *McLaughlin,* an award of attorneys' fees to the Debtor's counsel for services performed in maintaining this action will be appropriate. We note that such an award is not proscribed by the Eleventh Amendment, see *Missouri v. Jenkins, supra;* and *Hutto v. Finney, supra,* although any potential damages awarded to the Debtor may have been. Therefore, when this matter reaches its conclusion, the Debtor's counsel will be granted reasonable attorneys' fees, after submission of an appropriate Application for same in procedural conformity with *In re Meade Land & Development Co., Inc.,* 527 F.2d 280 (3d Cir.1975); and *In re Mayflower Associates,* 78 B.R. 41 (Bankr.E.D.Pa.1987).

7. THIS COURT SHOULD HEAR THE MERITS OF THE DEBTOR'S TURNOVER PROCEEDING.

 The State could have proceeded with its Forfeiture Action in the state court if it had successfully petitioned this court for relief from the automatic stay. The bankruptcy court, in *Ryan II,* 32 B.R. at 797, thusly recited the difficulties in resolving such a motion for relief from the stay:

The choices before the Court are difficult: (1) deny the complaint to lift stay and force the State to litigate its claim to the funds in this forum, which runs the risk of exercising jurisdiction over a state-created cause of action, running afoul of *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 [102 S.Ct. 2858, 73 L.Ed.2d 598] (1982), possibly embroiling this Court in a controversy in which it possesses no expertise and which perhaps ought to be left to the State as a matter of comity; or (2) granting the lifting of the stay and thereby possibly abrogate to a State court the proper function of the bankruptcy court of determining whether or not the fund in question is an asset of the estate.

The court chose the second alternative, but limited the role of the state court to that of fact-finder, "by restrictively modifying the stay to permit the forfeiture case to proceed to judgment, and no further." *Id.* It also appears to hold that, no matter what the result in the state court, the Funds were directed to ultimately be delivered to the Trustee. *Id.* at 798.

In *Reid*, 60 B.R. at 306, the forfeiture hearing was held in the bankruptcy court. The court, however, did not discuss its reasons for doing so.

For several reasons, we believe that it is appropriate for us to assume the approach of the *Reid* court, and hear the turnover action, assuming that, as we direct, the Debtor joins the Trustee as a party plaintiff. Firstly, we are somewhat confused by the alternatives suggested by *Ryan II*. The bankruptcy court apparently intended to remain involved in the disposition of the forfeited funds irrespective of the outcome of the proceeding which it remanded to the state court. It appears duplicative of judicial resources to have the final disposition of the Funds resolved in part by two separate courts. Secondly, this is a core proceeding. Principles of abstention or remand to state or other courts are usually reserved for non-core proceedings. *See, e.g., In re Gurst*, 75 B.R. 575, 577–78 (Bankr.E.D.Pa.1987); and *In re United*

*Church of the Ministers of God*, 74 B.R. 271, 277–78 (Bankr.E.D.Pa.1987). In the ordinary course, we should decide core proceedings here. We are very sensitive to the fact that this is a Chapter 7 case ready for discharge. A delay in administration caused by referral of the matter to a state court would be a most unfortunate development for all of the Debtor's creditors. Thirdly, we have already taken testimony in this matter. We will allow all of the parties to present further evidence, but it is possible that little supplementary evidence will be provided, either by the apparently-reluctant Trustee or by any other party. It seems wasteful to require a state court to redo all that we have done starting from scratch. Finally, the State has not moved for relief from the stay and we would be compelled to become embroiled in deciding whether such a motion, at this late juncture, should be granted. It appears that it would be simpler for us to hear the matter in this court and conclude it here.

### D. CONCLUSION

An Order consistent with the conclusions reached in this Opinion will be entered.

### ORDER

AND NOW, this 13th day of March, 1990, upon consideration of the record established at the January 11, 1990, hearing, and the Briefs submitted by the parties, it is hereby ORDERED AND DECREED as follows:

1. The Defendants' Motion to Dismiss this proceeding is DENIED, provided that the Plaintiff–Debtor complies with paragraph three hereof.

2. Judgment is entered in favor of the Debtor and against the Defendants in part. The Order of July 21, 1989, in *New Jersey v. $7,990.00 in United States Currency*, Superior Court of New Jersey, Law Division, Burlington County, Docket No. W-027603–88 is STRICKEN and all proceeding in that action are hereby STAYED.

3. The Debtor shall amend her Complaint to join the Trustee, Stephen Raslavich, Esquire, as an involuntary party

plaintiff hereto on or before March 20, 1990.

4. If the Debtor fails to file an Amended Complaint in accordance with paragraph three of this Order, the Complaint will be DISMISSED upon praecipe of the Defendants except as to the relief provided in paragraph two hereof.

5. If the Debtor does file an Amended Complaint, the Trustee or the Defendants may file any amended pleadings in response thereto on or before March 28, 1990.

6. A further hearing in this proceeding, to determine whether the Funds in issue should be turned over to the Trustee, shall be conducted on

THURSDAY, APRIL 5, 1990, at 10:00 A.M. in Courtroom No. 2 (Room 3718), United States Court House, 601 Market Street, Philadelphia, PA 19106.

## SUPPLEMENT TO OPINION OF MARCH 13, 1990

This Supplement to the foregoing Opinion is drafted to briefly explain the developments from the time that our Opinion of March 13, 1990, was entered to date, leading to the accompanying Order finally disposing of this matter.

Our Order of March 13, 1990, in the above-captioned adversary proceeding was not final. We directed that, before the matter could be finally decided, the Debtor was obliged to file an Amended Complaint adding the Chapter 7 Trustee, STEPHEN RASLAVICH ("the Trustee"), as an indispensable, involuntary party plaintiff on or before March 20, 1990.

The Debtor barely complied with this seemingly simple directive. On March 20, 1990, she filed a "Praecipe for change of defendants," which added the Trustee as a *defendant.* She apparently did not serve any parties therewith, frustrating the di-

rective that the Defendants and the Trustee reply on or before March 28, 1990, and evoking a Motion of the Defendants, filed March 28, 1990, to dismiss this proceeding because, as far as they knew, the Debtor had failed completely to comply with our Order.

On March 23, 1990, the Defendants filed an interlocutory appeal to the district court from our Order of March 13, 1990, docketed at Misc. No. 90–0224 (E.D.Pa.). The district court, on April 5, 1990, stayed the final hearing which we had scheduled that day pursuant to our Order of March 13, 1990, presumably in order to consider the appeal before we proceeded with the final trial. On April 11, 1990, the district court, after hearing argument, dismissed the interlocutory appeal and vacated the stay.[1] We rescheduled the supplemental trial on April 26, 1990.

At that supplemental trial, the parties resolved the procedural defect occasioned by the erroneous joinder of the Trustee by stipulating that his status be changed to that of a party plaintiff.

The only witness at the supplemental trial was the Debtor. She testified that the funds in issue were the remainder of the proceeds of a loan of about $15,000 which she had made from the Philadelphia Federal Credit Union in May, 1986. The Debtor testified that the money was originally borrowed to effect home improvements, but that she did not have all of the planned improvements made and retained about half of the funds borrowed in cash in her home until March, 1988, when, working 12 hours daily seven days a week caring for an elderly woman, she entrusted the funds with Patrick Brown to deliver to her friend in New York, Rubina Francis, with whom she intended to open a business. The Debtor vigorously denied any illegal

1. On April 5, 1990, the parties requested that we not publish our Opinion of March 13, 1990, as an element of a proposed settlement of this matter. We consider our publication practices beyond the scope of issues concerning which the parties may bargain. Furthermore, the Opinion was already published at 1990 Bankr. LEXIS 450 as of that date.

We note that we gave ample opportunity for the parties to settle this matter at a juncture prior to the lengthy process of preparation and publication of this Opinion, including the scheduling of an unsuccessful settlement conference before the Honorable William H. Gindin on February 9, 1990.

intent or use of the funds by her or Mr. Brown. This testimony was unrebutted and entirely credible.

The analysis contained in our Opinion of March 13, 1990, therefore appears accurate. We note that, in the interim, Judge Fox of this court has filed a Memorandum Opinion which cites our Opinion of March 13, 1990, with approval and follows it insofar as we held that a state agency is not barred from subjection to injunctive and declaratory relief when it violates the automatic stay by the dictates of the Eleventh Amendment to the Constitution. *In re Nejberger, Nejberger v. Pennsylvania Liquor Control Board,* 112 B.R. 714, 717 (Bankr.E.D.Pa.1990).

The wisdom of our decision to hear the merits of the turnover proceeding therefore appears to have been confirmed. The Defendants never requested relief from the stay from this court to proceed in state court. The supplemental hearing was heard in less than a half hour. The Defendants apparently had no evidence to rebut the Debtor's exculpatory declarations despite the contention of Defendant Draper and the Defendants' counsel, at the hearing of January 11, 1990, that such evidence existed and would have been produced had the Defendants been on notice that we would proceed to hear the merits of this matter. Very little additional resources were extended by us in rendering this final decision.

We therefore shall proceed to do so.

### ORDER

AND NOW, this 1st day of May, 1990, upon consideration of the record established at the trial of April 26, 1990, which supplemented the earlier trial of January 11, 1990, it is hereby ORDERED AND DECREED as follows:

1. Judgment is entered in favor of the Plaintiff–Debtor, NORMA Y. JAMES, and against the Defendants, JACQUELINE DRAPER, State of New Jersey, Department of Law and Public Safety, Division of Criminal Justice; PETER N. PERRETTI, JR., Attorney General of the State of New Jersey; and ROBERT T. WINTER, State of New Jersey, Department of Law and Public Safety, Division of Criminal Justice, jointly and severally, in their respective official capacities only, in the amount of $7,990.

2. The Defendants shall pay the sum of $7,990.00 to the Plaintiff–Trustee, STEPHEN RASLAVICH, ESQUIRE, on or before May 18, 1990. The said Trustee shall determine whether these sums or any part thereof may be claimed as part of the Debtor's exemptions, and, if they may be, he shall forward the sums which are includable in her exemptions to the Debtor forthwith.

3. The parties are urged to attempt to agree upon reasonable attorneys' fees and costs which are due to the Debtor's counsel pursuant to 11 U.S.C. § 362(h). If this matter is not resolved by that date, the Debtor's counsel may, on or before May 18, 1990, file a Motion requesting such fees, said Motion to be procedurally in conformity with *Meade Land and Development Co., Inc.,* 527 F.2d 280 (3d Cir.1975); and *In re Mayflower Associates,* 78 B.R. 41 (Bankr.E.D.Pa.1987). However, if the Debtor's counsel has made a reasonable request for such fees which is refused, the said counsel may recover compensation for time spent on the fee application as well.